## HARRIET H. STONE v. THE STANDARD LIFE & ACCIDENT INSURANCE COMPANY.

*Negligence—Evidence—Refreshing recollection of witness—Statements made at time of observation of premises—Appearance of premises subsequent to time of accident.*

1. For the purpose of refreshing the recollection of a witness who testifies for the plaintiff in a negligence case to the surroundings of the accident as observed by him, his attention may be called to his statements made before the coroner's jury on the same subject.

2. As bearing upon the question of the exercise of due diligence for his personal safety by an insured person who was killed by falling into an excavation under a sidewalk, which had been partly covered, and so as to resemble, under an electric light, a continuation of the sidewalk, it is competent for the plaintiff to show the appearance of the walk on the succeeding night, under like circumstances and surroundings, by witnesses who took observations, and whose testimony was similar to that of witnesses who observed such appearance on the night of the accident.

Error to Wayne. (Gartner, J.) Argued June 6 and 7, 1888. Decided June 22, 1888.

Negligence case. Defendant brings error. Affirmed. The facts are stated in the opinion.

*James T. Keena (Edwin F. Conely,* of counsel), for appellant.

*Dickinson, Thurber & Stevenson,* for plaintiff.

71 MICH—6

CHAMPLIN, J.   Mrs. Stone, as the beneficiary named in a policy of insurance issued by defendant, brought suit, alleging the death of her husband, who was the assured, "through external, violent, and accidental means," on July 29, 1886.

The defendant's contention was as follows:

1. The death of Hamilton Stone (the assured), and the injuries occasioning the same, happened *in consequence* of his being under the influence of intoxicating drinks.

2. That his death happened *while he was* under the influence of intoxicating drinks.

3. That it happened through his failure to use due diligence for his own personal safety and protection.

The defendant's denial of the plaintiff's right of recovery is based upon the following conditions of the policy, viz.:

"1. And no claim shall be made under this policy   *   *   *   when the death or injury may have happened while the insured was, or in consequence of his having been, under the influence of intoxicating drinks.

"2. The insured is required to use due diligence for personal safety and protection."

Testimony was introduced upon these issues, and the defendant's counsel submitted to the jury the following questions:

"1. Was Hamilton Stone, when he fell into the cellar or excavation in question, and received his fatal injury, in any wise under the influence of intoxicating drinks?

"2. Did the death of Hamilton Stone happen in consequence of his having been under the influence of intoxicating drinks?

"3. Did Stone use due diligence for his own safety and protection?

"4. Could Stone, by the exercise of that degree of care and watchfulness which ordinarily prudent people exercise concerning their own personal safety and protection, have avoided falling into the cellar or excavation in question?"

The jury answered the first, second, and fourth questions in the negative, and the third in the affirmative.

The testimony introduced warranted special findings of the jury, and the facts thus found are conclusive against the defense relied on by defendant to defeat a recovery.

The assured met his death at about 1 o'clock on the morning of July 29, by falling into an excavation made in the sidewalk of Grand River avenue, in the city of Detroit, where the Young Men's Christian Association building was in process of erection. This excavation extended nearly or quite across the width of the sidewalk to the depth of 12 feet or more. On the night named he was walking along the sidewalk of Grand River avenue from the direction of Woodward avenue. The sidewalk was composed of flagging stone of a gray color. From the end of the excavation opposite that towards which Stone was approaching, there had been constructed a scaffold, the covering of which was plank, upon which lime and stone had been deposited, and which was nearly on a line with the sidewalk, and had very much the same appearance as the flagging stone at that time of night.

There was a space between this scaffold and the edge of the excavation towards which Stone was approaching, of about 15 or 20 feet uncovered. A barricade across the sidewalk had been placed close to the edge of this excavation, consisting of sewer crocks from 25 to 30 inches in height, and one foot in diameter,—one placed at the outer edge of the sidewalk, and one near the center. An abutment of stone of about the same height was standing near the line of the inner edge of the walk. Plank was placed on top of these crocks and the abutment, lapping on the center crock, and upon these heavy stones were placed. An electric light some distance off cast its rays upon the scene of the accident brilliantly enough to deter-

mine the time of night upon the dial of an ordinary watch.

Richard H. Lansing was coroner, and was immediately summoned to the scene, and made observations of the surroundings, and he was produced as a witness by the plaintiff, and gave his testimony respecting the situation. He testified:

"There was no barricade except these planks laid on top of these crocks.    Evidently the barricade had broken in when Mr. Stone fell into the cellar, and further on the barricade was still up.    This barricade was simply boards or planks laid on the top of the sewer crocks.

" Q. On that night did you step back from the edge of the excavation about ten feet, and look up Grand River avenue to the west?

" A. I do not know the number of feet, but I certainly looked up from Grand River avenue in the direction of the excavation along the line of what would be the sidewalk if it was continued through to Griswold.    *    *    *

" Q. How close to the excavation were you when you took that observation?

" A. That would be impossible to tell.    I know I noticed at that time what might be a seeming delusion as to the trestle-work along by the wall on a level with the sidewalk, on an exact line with where the sidewalk would be if it was in position, and the reflection of the electric light over in another direction coming as it did, it occurred to me that it might be a sort of delusion, looked as though there was a real sidewalk in existence there.    That idea struck me on the spot, by going out to several different points, and noticing the similarity in appearance of the grayish color of the planking on the top of the trestles, and comparing it with the appearance of the flag sidewalk.

". Q. Was that appearance as though it was a continuation of the sidewalk?

" A. Yes, sir, for a part of the way it was.

" Q. Well, at what point did it not appear so?

" A. Certainly where the end of the trestle-work and the end of the wall stopped it presented a broken appearance.

" Q. That is, when you got on to the edge and looked down?

" *A.* Not necessarily.

" *Q.* Did you not make this statement to the coroner's jury : ' In walking up Grand River avenue ' "—

Counsel for defendant here objected to the introduction either in the form of a question or anything else of that statement, for the reason that it was not legitimate or proper, nor did the witness need it.

The court directed the question to be asked, and counsel for defendant excepted to the ruling. The counsel then asked the question as follows :

" *Q.* After making that observation on Grand River avenue that night, did you not make this statement before the coroner's jury : ' In walking up Grand River avenue on this side, when you got within ten feet of this excavation, by reason of the stone wall and mason's platform built out on the Grand River side beyond the walk, consisting of horses and plank laid across, as it was last night, as a person approached it, the appearance would be exactly that of a stone sidewalk?' "

To which he answered :

"I cannot recollect the exact words. My impression is, as I told you a moment ago, that with the reflection of the electric light it gave to it the appearance of a sidewalk, that is, taking in the line away up to Griswold street."

· Counsel for defendant have assigned error upon the ruling of the court in permitting the question. We do not perceive any error in the ruling. Apparently, the counsel for plaintiff wished .to ascertain from the witness the distance he was from the excavation when the sidewalk appeared continuous. The witness was unable ;to state. For the purpose of refreshing his recollection, it was not improper to call his attention to statements made by him at or about the time he made his observations.

Counsel for plaintiff, however, did not place his privilege to ask the question upon this ground, but because the witness was an unwilling witness. We see nothing

in the character of the testimony given by the witness that shows that he was unwilling to state all the facts which he recollected, although the testimony shows that he had been employed by defendant to procure the attendance of some of its witnesses. We cannot reverse the case upon this assignment, since the answer to the question shows that no prejudice was done to defendant's case. What he stated before the coroner's jury was substantially what he stated in his testimony before the trial jury.

The plaintiff introduced witnesses to show the appearance of the walk at night under like circumstances and surroundings on the night succeeding the accident, who gave testimony similar to those who observed the appearance on the night of the accident.

Counsel for defendant objected to the introduction of such testimony, because it was subsequent to the time of the accident, and he now insists that such testimony was held to be improper in *Klanowski v. Railway Co.*, 64 Mich. 279 (31 N. W. Rep. 275).

There is no parallel between the two cases. That was testimony as to an experiment involving several assumed factors to produce a given result. Here the testimony was of a fact relative to the appearance which the sidewalk and the excavation covered with plank presented to a person passing along in the night under exactly similar circumstances and surroundings. The testimony was admissible as bearing upon the issue whether the deceased was in the exercise of due diligence for his personal safety and protection.

The charge as to the preponderance of testimony we think was not misleading to the jury.

The judgment is affirmed.

The other Justices concurred.