## BRESCH *v.* WOLF.

1. APPEAL AND ERROR—ADMISSION OF TESTIMONY AS TO LETTER NOT ERROR WHERE RECORD SHOWS IT WAS SUBSEQUENTLY ADMISSIBLE.

In an action for the alienation of the affections of plaintiff's husband, there was no error in admitting plaintiff's testimony as to contents of an endearing letter written to her husband by defendant, although it was not sufficiently identified at the time, in view of admissions subsequently made by defendant as to letters written by her to plaintiff's husband.

2. WITNESSES—HOSTILE WITNESS—LEADING QUESTIONS. .

Where plaintiff's witness did not answer questions put to him by plaintiff's counsel as it was evidently expected he would, in view of the contents of an affidavit by him, the circuit judge was justified in concluding that the witness was hostile and in permitting leading questions to be asked and in permitting him to be confronted with his own affidavit for the purpose of refreshing his recollection.

3. SAME—DISCRETION OF COURT.

Permitting the asking of leading questions where party's own witness appears to be hostile rests largely in the discretion of the trial court.

4. EVIDENCE—ADMISSIBILITY.

In an action for alienation of husband's affections, in which defendant claimed she did not know that the husband was a married man, where a witness for plaintiff had testified respecting a conversation between defendant and the husband to show that defendant knew he was married, it was error to exclude defendant's testimony as to said conversation.

5. APPEAL AND ERROR—HARMLESS ERROR.

Error in excluding defendant's testimony as to a conversation between her and plaintiff's husband was not prejudicial, where defendant's version of the conversation was fully placed before the jury by the testimony of another witness.

6. TRIAL—INSTRUCTIONS—CHARGE CONSTRUED AS WHOLE.

If a single sentence or statement in a charge is qualified or explained by another portion given in immediate connection therewith, it is not permissible to segregate the single sentence or statement from its context and allege error upon a seeming inaccuracy thus caused, unless it is clearly such that it misdirected the deliberations of the jury.

7. SAME.

In an action for alienation of husband's affections, an instruction that if defendant knew plaintiff's husband was a married man she would be guilty of malice and intent to injure plaintiff as charged, and verdict should be for plaintiff, was not objectionable as withdrawing from the jury the question as to whether defendant had been the aggressor, where it was immediately followed by an instruction placing the burden on plaintiff to show that defendant actively induced or enticed plaintiff's husband to withdraw his affections from plaintiff and bestow them upon defendant.

8. HUSBAND AND WIFE — INTERFERENCE OF STRANGER PRESUMED MALICIOUS.

Any interference by a stranger with a husband's or wife's affections is presumed to be malicious.

9. SAME—TRIAL—INSTRUCTIONS—ALIENATION OF AFFECTIONS.

In an action for alienation of husband's affections, an instruction to the effect that· if defendant had knowledge that plaintiff's husband was a married man, and still received his attention with a wicked design intentionally to deprive plaintiff of her husband, then plaintiff should recover, *held*, not misleading or prejudicial under the facts.

10. SAME—VERDICT JUSTIFIED BY EVIDENCE.

Where the primary if not controlling issue was as to whether defendant knew that plaintiff's husband was a married man during the period of their intimacy, which the jury decided against defendant, evidence *held*, sufficient to justify a verdict in favor of plaintiff, in view of defendant's admissions.

Error to Mecosta; Barton (Joseph), J.     Submitted

June 6, 1928.     (Docket No. 32, Calendar No. 33,731.)
Decided July 24, 1928.

Case by Emma J. Bresch against Winifred Wolf for the alienation of the affections of plaintiff's husband. Judgment for plaintiff.     Defendant brings error. Affirmed.

*Jewell, Face, Messinger & Grettenberger,* and *A. A. Worcester,* for appellant.

*Irving H. Smith* and *John E. Dumon,* for appellee.

NORTH, J.    The plaintiff herein is the wife of George Bresch, and she instituted this suit to recover damages for the alleged alienation of his affections. A verdict for $4,620 was obtained but this was reduced by the circuit judge to $2,310.    The defendant reviews by writ of error.

The plaintiff and her husband became residents of Grand Rapids, Michigan, in 1921.    He was employed as the manager of a store operated by the Anderson Tool & Supply Company.    This store was located next door to a drug store operated by the defendant's husband, Mr. W. P. Wolf.    Because Mr. Wolf was in ill health, the defendant assisted him in and about the store.    It was here that she first became acquainted with plaintiff's husband.    Mr. Wolf died in October, 1922.    The store was thereupon taken in charge by the representative of his estate; and about a year later Mrs. Wolf returned to her former home in Big Rapids. Here she was visited frequently by Bresch; she claims a courtship followed and that they planned to be married about January 1, 1926.    Bresch left the week before Christmas, 1925, on the pretext of making a business trip to Detroit and Chicago.    Eventually he went to St. Louis, Missouri, where he and his wife took up their abode about this time.    He continued

to correspond with the defendant, but she claims that she did not understand his change of plan and prolonged absence. While admitting her friendly relation with plaintiff's husband, the defendant strenuously maintains that throughout their associations he represented to her that he was an unmarried man and that she believed this to be the fact until 1926; that in April of that year, in replying to her demand for an explanation of his continued absence, he wrote her that he had deceived her and wanted to return and explain; and that in July following he did come to her home and informed her he was married, that she thereupon told him to go and she has not associated with him or communicated with him in any way since. In her claim that Bresch held himself out as a man unincumbered by matrimonial obligations, the defendant is corroborated by a number of her witnesses. But the plaintiff maintains there is ample proof in the record to sustain her claim that the defendant knew Bresch was a married man; and that "the defendant did wrongfully and wickedly alienate and destroy the affections of the husband of the plaintiff and did cause him to leave the plaintiff's home and to refuse longer to live with her," etc., as alleged in plaintiff's declaration. Bresch left his wife July 24, 1926, in St. Louis, Missouri; and at the time of the trial each of these parties disavowed knowledge as to his whereabouts.

The alleged errors in consequence of which the defendant asks to have the judgment set aside are considered in her brief under the following heads:

1. Error was committed by admitting oral testimony as to the contents of a letter which the plaintiff claims she found in the possession of her husband. The objection to this testimony is that the letter was not sufficiently identified as one written by the defendant. The plaintiff testified that in June, 1926, she

243—Mich.—41.

found in her husband's possession an endearing letter which the defendant had written to him.    This letter was signed "Winifred," postmarked "Big Rapids," but the plaintiff did not know at that time the identity of the writer.    The plaintiff claims that when she confronted her husband with this letter he knocked her down and forcibly took it from her and that she has not been able to regain possession of it.    The plaintiff says that she had read this letter twice; and that it was addressed "Dearest George," and the writer thanked him for flowers, silk stockings, and other presents; and concluded with the sentiment "that she wished she had wings and could fly to his arms."

The record shows that Mrs. Bresch called upon Mrs. Wolf at the latter's home in September, 1926, and on rebuttal the following testimony was given by Mrs. Bresch relative to the letter in question:

"*Q.* Upon that occasion did you talk with Mrs. Wolf about a letter that she had sent to your husband and that he had taken away from you?

"*A.* Yes, I did.    *    *    *

"*Q.* Did you speak to Mrs. Wolf then about the fact that she had written that letter to your husband that she could fix his marriage?    (Objection by counsel and no answer.)

"*Q.* Was there any conversation like that?

"*A.* Oh, yes, there was.    *    *    *

"*Q.* Did she say that she had written it?

"*A.* Yes, she had written it.    She acknowledged it.

"*Q.* Did she acknowledge that she had written to your husband that she could fix his marriage?

"*A.* Yes, sir."

Robert C. Hastie was employed by the plaintiff (as he states) to do "a little investigation on her case." He also called upon the defendant at her home in Big Rapids, and he testified that:

"She said she wrote to Mr. Bresch pretty often, and in fact she quoted some poetry from one of the letters she had written him.

"*Q.* Can you tell a part of the poetry or whatever it was that she repeated?

"*A.* The very end of some of it, that she wished she could fly into his arms, and something like that."

The defendant, who was about 52 years of age, was called by the plaintiff for cross-examination, and the following is from her testimony:

"My name is Winifred Wolf. I live at 314 Stewart, Big Rapids. I have lived there four years. Prior to that time I lived in Grand Rapids. My husband's name prior to the time he died was W. P. Wolf. He ran a drug store on Bridge street; * * * to the west was Mr. Bresch's store. His name was George Bresch. I first met Mr. Bresch in 1921. I first met Mrs. Bresch a year ago this September at my home. She came to me and asked if I knew Mr. Bresch, that she was his wife. The first time she came alone; the second time with a witness, I took it to be."

In testifying further, Mrs. Wolf admitted that she had written Bresch a good many letters; that she had loaned him money; and that she had made him presents, and that he visited her at her home about once a month. At the time the oral testimony as to the contents of the letter was offered and received only a part of the above record had been made, and as it then stood the record was not sufficient to identify the letter as one written by the defendant; but we are of the opinion, in view of the contents of the record as finally made and as herein quoted in part, the ruling of the circuit judge in admitting the oral testimony must be approved.

2. Was the method of direct-examination of the witness Harold Grabill, as permitted by the court, improper and prejudicial? Before the trial this witness had signed an affidavit relating to this case. It is evident that because of an unwilling attitude or because of a failing memory the witness did not answer certain questions put to him by plaintiff's counsel as

it was expected he would, in view of the contents of the affidavit. We think the record discloses a condition which justified the circuit judge in concluding that the witness was hostile and in permitting leading questions to be asked of him, and also in permitting counsel to confront the witness with his own affidavit for the purpose of refreshing his recollection. Such matters rest largely in the discretion of the trial court. *McGee* v. *Baumgartner,* 121 Mich. 287; *People* v. *Johnson,* 186 Mich. 516.

3. Did the trial court in excluding defendant's testimony as to a conversation between herself and plaintiff's husband prejudice defendant's case. The witness Harold Grabill, after being confronted with the affidavit he had signed, testified that on one occasion when he thought Bresch asked Mrs. Wolf to go to the theater she said: "No, you are a married man," and that he thought her son was with her at the time. Later in the trial defendant's counsel attempted to interrogate Mrs. Wolf about this incident. This was of importance because the defense was grounded largely upon the claim that the defendant did not then know that Bresch was married. She testified that after she and her son had parked their car in front of the place of business of Mr. Bresch, he asked if she would come in, that she and her son did so after going to the bank, and that Bresch said to her:—"Why don't you and Jack (the son) come to the show with me?" * * * She was interrupted by the objection of plaintiff's counsel and the court said: "Yes, that is objectionable. Tell us what took place without repeating the conversation." The witness then continued: "That was all, then we went home. At that time nothing was said by him or by me about his being married. Up to that time I had never been told nor did I know that he was married." The defendant's son, who was 22 years old, was allowed to

testify concerning this circumstance without objection, as follows:

"*Q.* Do you recall an occasion when you and your mother were out in front of Mr. Bresch's place of business and something was said about going to the theater?

"*A.* Yes.

"*Q.* That was some time after Mr. Wolf died?

"*A.* Almost a year afterwards.

"*Q.* And I will ask you whether or not such a conversation as this took place: Did Mr. Bresch say to your mother: You better stay and let us go over to the theater, and did she say No, I can't do that because you are a married man?

"*A.* He made the request but it was not answered that way at all.

"*Q.* She did not say that?

"*A.* No.

"*Q.* And do you recall what she did say or what reason she did assign for not going to the theater with him?

"*A.* Well, we drove home that night; we were living in Big Rapids then, and she said, We better go on home, it is getting late."

It must be held that the defendant should have been allowed to testify whether anything was said in this conversation about Bresch being a married man; because a witness for the plaintiff had testified as to what was said concerning this for the evident purpose of showing that the defendant then knew Bresch was married. But notwithstanding the ruling at first made it conclusively appears from the record quoted that the defendant's version of this conversation was fully placed before the jury and therefore her rights were not adversely affected. *Vezina* v. *Shermer*, 198 Mich. 757.

4. The appellant has assigned error on two portions of the charge to the jury. The first of these is embodied in the following sentence:

"I instruct you that if you find from the evidence

in this case that the defendant, Winifred Wolf, had knowledge that George Bresch was a married man, then she would be guilty of malice and intent to injure plaintiff, as charged, and your verdict should be for the plaintiff."

The objection made in defendant's brief to this and the subsequently quoted portion of the charge is:

"By these instructions the court definitely and concisely stated, in substance, that all that was necessary to hold defendant liable was for plaintiff to show that defendant had knowledge that George Bresch was a married man, and that if she did, it conclusively followed that she would be guilty of malice and intent to injure the plaintiff as charged. He definitely narrowed the issue down to the question of whether the defendant had knowledge of his marriage and knowingly received his attentions.

"These instructions took from the jury one of the most outstanding and indispensable elements in the case. They withdrew from the jury the question of whether or not the defendant was the aggressor, whether she actively induced, persuaded or procured or enticed the plaintiff's husband to withdraw his affections from his wife and bestow them upon the defendant."

If a single sentence or statement in a charge is qualified or explained by another portion given in immediate connection therewith it is not permissible to segregate the single sentence or statement from its context and allege error upon a seeming inaccuracy thus caused unless it is clearly such that it misdirected the deliberations of the jury. "The correctness of a charge cannot be determined by isolated sentences." *Brown* v. *Evans;* 149 Mich. 429. In the charge as given the sentence above quoted is immediately followed by these statements of the law of the case:

"As requested by the defense, I charge you that this is an action for enticement and alienation of the affections of the plaintiff's husband, and in this action the burden rests upon the plaintiff to establish by evi-

dence that the defendant actually enticed the plaintiff's husband and that she did so maliciously and intentionally. The burden is upon the plaintiff to show that the defendant actively used her influence to persuade the plaintiff's husband to withdraw his affections from Mrs. Bresch, and to devote his affections to the defendant. It is not sufficient for the plaintiff to show that the defendant merely yielded passively to George Bresch's attention or advances unless she encouraged or invited them by her words or actions. If he bestowed his affections upon the defendant in the first instance without encouragement or persuasion from her, then she is not guilty of enticement and your verdict should be, in that event 'no cause for action.' The burden is upon the plaintiff to show that the defendant acted maliciously with intent to commit a wrongful act."

With the law thus announced to the jurors, it seems quite incredible they should have understood that recovery by the plaintiff depended only upon proof that she knew Bresch was a married man; nor could they well have failed to understand that the burden was upon the plaintiff to prove the defendant "actively induced * * * or enticed the plaintiff's husband to withdraw his affections from his wife and bestow them upon the defendant." The requests of the defendant covering this phase of the case were given almost verbatim, and immediately following the sentence which is made the basis of the alleged error. The only explanation found in the record for the breaking up of the Bresch home is his associations with the defendant; and her only excuse or justification for such associations is that she did not know Bresch was a married man. This being her sole defense, it is difficult to believe the result in the case was changed in any way by the court's instructions to the effect that if Mrs. Wolf knew of Mr. Bresch's marriage her relations with him as admitted by her constituted proof of being a party to a wrong intentionally done, and hence she was guilty of acting maliciously. "Any

interference by a stranger with a husband's or wife's affections is presumed to be malicious." *Smith* v. *Smith*, 192 Mich. 566.

The other portion of the charge as to which error is assigned is this:—

"Now, gentlemen, the issue is a very narrow one. Did she have knowledge, and did she knowingly receive the attention of George Bresch? Did she do it with a wicked design intentionally to deprive this plaintiff of her husband, his affections, his society and his support."

We think that as applied to the facts presented in this case in connection with the remaining portion of the charge, the foregoing is not an erroneous statement of the law. Construed with the next preceding sentence, it amounts to saying to the jurors that if the defendant had knowledge that Bresch was a married man, and still received his attention "with a wicked design intentionally to deprive this plaintiff of her husband," then the plaintiff should recover. That the defendant was an active, rather than a passive party in fostering the relations between herself and Bresch, is evidenced by her own admissions that she went to places of amusement with him, made him presents, wrote him endearing letters, entertained him in her home on many occasions, and finally, if her testimony is to be accepted, a marriage was planned between them. With such a record as this we think the charge as given did not mislead the jury nor prejudice the defendant's rights.

Stripped of details, this is a case wherein the primary, if not the controlling issue, was whether the defendant knew Bresch was a married man during the period of their intimate associations. The jury found against the defendant on this question, and we find sufficient evidence in the record to justify the verdict. With this fact determined in favor of the plaintiff, the defendant's own admissions as a witness were

sufficient to carry the case to the jury on the other issues involved.

We have considered other questions presented by appellant's brief, but find it unnecessary to discuss them further.

We are of the opinion that the judgment of the circuit court should be affirmed, with costs to the appellee.

FEAD, C. J., and FELLOWS, WIEST, CLARK, McDON-ALD, POTTER, and SHARPE, JJ., concurred.