DURBIN v K-K-M CORPORATION

1. WITNESSES—REFRESHING RECOLLECTION—IMPEACHMENT.

   The purpose of refreshing a witness's recollection is to awaken memory and not to impeach or contradict the witness.

2. WITNESSES—REFRESHING RECOLLECTION—MEMORANDA—NECESSITY —EVIDENCE—ADMISSIBILITY.

   An essential requirement in using memoranda to revive a witness's present recollection is the necessity to resort to the memoranda to refresh memory; however, it is not necessary to place the memoranda or notes in evidence because the recollection and not the memoranda is the evidence.

3. WITNESSES—REFRESHING RECOLLECTION—MEMORANDA—DISCRETION.

   The extent to which witnesses may refer to or read from refreshing memoranda and the extent to which such memoranda may be reviewed by counsel or the jury is usually a matter within the discretion of the trial court, and the trial court will not be reversed in the absence of abuse of discretion.

4. WITNESSES—REFRESHING RECOLLECTION—PRIOR INCONSISTENT STATEMENTS—DISCRETION—IMPEACHMENT—APPEAL AND ERROR.

   Allowing defense counsel to use a prior inconsistent extrajudicial statement to refresh the recollection of a witness for the plaintiffs was not an abuse of discretion where the witness manifested much difficulty in recalling details and in fact noted that, to some degree, the statement had revived some memory;

REFERENCES FOR POINTS IN HEADNOTES

[1–4] 58 Am Jur, Witnesses § 578 *et seq.*
[5] 53 Am Jur, Trial § 914.
[6] 58 Am Jur, Witnesses § 821 *et seq.*
[7] 29 Am Jur 2d, Evidence § 661.
[8] 29 Am Jur 2d, Evidence § 590.
[9, 11–13] 45 Am Jur 2d, Intoxicating Liquors §§ 561–614.
[10] 58 Am Jur, Witnesses § 851 *et seq.*
[14] 58 Am Jur 2d, New Trial §§ 101, 212, 213.
   Manifestation of emotion by party during civil trial as ground for mistrial, reversal, or new trial. 69 ALR2d 954.
[15] 5 Am Jur 2d, Appeal and Error §§ 702, 726.

in any event the statement was properly used for impeachment purposes as a prior inconsistent statement and, on this ground alone, the action of the trial court was not erroneous because a right conclusion will not be disturbed on appeal even though based on the wrong theory.

5. WITNESSES—CREDIBILITY—EVIDENCE—WEIGHT—JURY.

A jury is the sole judge of credibility of witnesses and the weight to be accorded their testimony.

6. WITNESSES—CREDIBILITY—PRIOR STATEMENTS—TRUTH—IMPEACH-MENT.

Prior statements introduced for impeachment purposes bear solely upon the credibility of the witness and are not considered for the purpose of establishing the substance or truth of the prior statements.

7. EVIDENCE—ADMISSIONS—ADOPTIVE ADMISSIONS.

An adoptive admission is the express adoption of another's statement as one's own on the part of a party which manifests circumstantially that party's assent in the truth of a statement made by another.

8. EVIDENCE—HEARSAY—HARMLESS ERROR.

Admitting into evidence a portion of a deposition which referred to a statement allegedly given by the deposed witness to an investigator was error as hearsay where the witness was unavailable at trial for cross-examination and where it was not shown that the statement made to the investigator was the witness's statement for impeachment purposes; however, where two other witnesses testified regarding the same events covered by the deposition, and a review of the record does not show a miscarriage of justice, the parties complaining were not prejudiced so as to warrant reversal and another trial (MCLA 769.26).

9. INTOXICATING LIQUORS—DRAMSHOP ACT—EVIDENCE—PRIOR DRINK-ING HABITS—SELF-SERVING TESTIMONY.

Testimony of a decedent's drinking habits given by his wife in a dramshop action was properly excluded as self-serving where the decedent's wife had no personal knowledge of his state of intoxication on the day in question.

10. WITNESSES—EXPERT WITNESSES—HYPOTHETICAL QUESTIONS—EVI-DENTIARY BASIS.

Hypothetical questions to expert witnesses must be based on firsthand knowledge or upon facts in the record at the time the

expert gives his opinion or a combination of the two; therefore, allowance of hypothetical questions posed by defense counsel was not error where the questions were not completely afield of the issues at trial, and did not seek abstract answers.

11. INTOXICATING LIQUORS—DRAMSHOP ACT—INSTRUCTIONS TO JURY.

Plaintiffs in a dramshop action were not prejudiced by the trial court's failure to read the entire dramshop statute in instructing the jury where the instructions adequately informed the jury that any person who sold intoxicating liquor to an intoxicated person would be liable for any injuries sustained as a result of the intoxication (MCLA 257.625a).

12. INTOXICATING LIQUORS—DRAMSHOP ACT—CIRCUMSTANTIAL EVIDENCE.

An action under the dramshop act may be proved by circumstantial evidence.

13. INTOXICATING LIQUORS—DRAMSHOP ACT—PRESUMPTION OF INTOXICATION—INSTRUCTIONS TO JURY—PRESERVING QUESTION.

Failure of a trial court in a dramshop action to instruct the jury on the statutory presumption of intoxication was not properly preserved for appeal where no objection was made at trial and where no manifest injustice is shown (MCLA 257.625a; GCR 1963, 516.2).

14. NEW TRIAL—DISCRETION—PREJUDICE.

The granting or denying of a motion for new trial rests within the sound discretion of the trial court and reversal of such an order is a function of whether prejudicial error was committed and an abuse of discretion is found.

15. APPEAL AND ERROR—JURY VERDICT—MISCARRIAGE OF JUSTICE.

The Court of Appeals will not substitute its judgment for that of a jury unless a careful review of the record reveals a miscarriage of justice.

Appeal from Macomb, Hunter D. Stair, J. Submitted Division 2 April 10, 1974, at Detroit. (Docket No. 16332.) Decided June 24, 1974. Leave to appeal applied for.

Complaint by Sharon K. Durbin, for herself and as next friend of her five minor children, against the K-K-M Corporation for damages under the

dramshop act. Judgment for defendant. Plaintiffs appeal. Affirmed.

*Frank R. Langton & Associates* (by *Sidney R. Borders*), for plaintiffs.

*Baun & Van Tiem,* for defendant.

Before: J. H. GILLIS, P. J., and HOLBROOK and VAN VALKENBURG,* JJ.

HOLBROOK, J. In 1970 James Lee Durbin was a man of 34 years of age. At around 7 in the evening of March 13th of that year, Mr. Durbin was involved in an automobile accident, injuries from which caused his death. A state police officer detected odors of alcohol on his breath. He was taken to a hospital where he was pronounced dead on arrival and a blood sample was taken. Analysis showed that the percentage of alcohol in the decedent's blood was sixteen one-hundredths of one percent.

The decedent had been employed by the Interstate Manufacturing Company and worked from 12 midnight until 8 a.m. on the morning of the accident. It appears that he and a number of coworkers left work and went to the Town Pump Bar in Romeo to cash their checks. Thereafter, they and other friends traveled on to go bowling. After being unable to bowl at the first bowling alley they sought out, they continued on to the Colonial Lanes. Colonial Lanes is owned and operated by K-K-M Corporation, defendant in this action. It appears that at approximately 2 in the afternoon, the decedent left the Colonial Lanes for

---

* Former circuit judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

the Starlite Inn.[1] At around 7 that evening the decedent left the Starlite Inn and after traveling some distance apparently attempted to pass a number of cars on the lefthand side of the road and continued through a stop sign into the path of an oncoming car.

Plaintiffs, wife and children of the decedent, brought the present action under the dramshop act, MCLA 436.22; MSA 18.993, to recover damages for the death of Mr. Durbin. After a lengthy and hard-fought trial, a jury returned a verdict of no cause of action. Thereafter, plaintiffs filed a motion for new trial which was denied. Plaintiffs here appeal asserting a number of errors. The assertions of error concern: (1) the use of a prior statement by defendant in cross-examination of plaintiffs' witness Mrs. Lila Skinner; (2) the use of portions of a deposition of a witness not before the court which referred to an extrajudicial statement; (3) exclusion of decedent's wife's testimony as to her husband's drinking habits; (4) the use of hypothetical questions propounded by the defense counsel to expert witnesses; (5) the jury instructions; (6) failure to grant plaintiffs' motion for a new trial; and (7) a claim that the jury verdict was against the great weight of evidence.

Further facts will be found where relevant to discussion of the particular issues.

## I

Plaintiffs called Mrs. Lila Skinner, a coworker of

[1] The Starlite Inn was owned and operated by one Glora Simi, who was originally designated as a defendant in this action. A consent judgment was entered on behalf of the plaintiffs against defendant Simi. It is to be noted that at trial Simi was the only one testifying that the defendant had been in her place of business in the morning from approximately 9 to 10 rather than in the afternoon and early evening.

the decedent, who had been with Mr. Durbin during the course of the day of the accident. She testified that they remained at the Town Pump for approximately 30 minutes and that the decedent there had a bottle of beer. She also testified that she and the decedent went bowling at the Colonial Lanes and that while there the decedent had drunk a number of bottles of beer, although she was unsure as to how many. During the course of direct examination, plaintiffs' counsel refreshed Mrs. Skinner's recollection by reading from her deposition. Defense counsel objected that this was improper unless plaintiffs' counsel was going to impeach the witness and, because surprise or hostile witness status had not been shown, impeachment was improper. This objection was overruled and testimony from the deposition was read.

A review of the record reveals that defense counsel in cross-examining this witness was faced with a reluctant, somewhat unwilling, and forgetful witness. Defense counsel produced a statement signed by Mrs. Skinner taken by an investigator. After Mrs. Skinner identified her signature on the "piece of paper" defense counsel proceeded to begin to read the statement. Plaintiffs' counsel objected on the basis that there was an insufficient foundation. While Mrs. Skinner admitted that the signature was her own, she denied remembering having read the statement. The trial court ruled that the statement could be read for purposes of refreshing recollection with the condition that the investigator who took the statement be produced at trial. Plaintiffs here assert that there was an improper foundation laid to refresh the witness's recollection or for admission into evidence, that the statement was not admissible for the purpose of refreshing recollection, and that there was not a

proper foundation laid for admission into evidence of the statement for impeachment purposes.

It has been said that the purpose of refreshing is to awaken memory and not to impeach or contradict a witness. *People v Thomas,* 359 Mich 251, 262; 102 NW2d 475, 482 (1960). An essential requirement in using memoranda to revive present recollection is the necessity to resort to the memoranda to refresh memory. *Battle Creek Food Co v Kirkland,* 298 Mich 515, 527; 299 NW 167, 172 (1941); *People v Bentley,* 47 Mich App 150, 158; 209 NW2d 333, 337 (1973). In *Battle Creek Food Co,* p 528; 299 NW 172, the Court said that it was not necessary to place the memoranda or notes in evidence as it was the recollection and not the memoranda which was evidence.

The extent to which witnesses may refer to or read from refreshing memoranda and the extent to which such memoranda may be reviewed by counsel or the jury is usually a matter within the discretion, of the trial court and, in the absence of abuse of discretion, the trial court will not be reversed. 82 ALR2d 473, § 4, p 489; 3 Wigmore on Evidence, § 765, p 145. *Hileman v Indreica,* 385 Mich 1, 8–9; 187 NW2d 411, 413 (1971), was an action brought under the dramshop act. The Court there wrote:

"The purpose of all witness-examination is that of getting at the truth, and the rule which denies to the voucher of credibility all right of impeachment should not be stretched into denial of his right to call to the attention of the witness the latter's previous statements, writings, affidavits or depositions which, upon the face or faces thereof, are apparently inconsistent with his trial testimony; the purpose and object being that of memory refreshment as set forth by Jones. [5 Jones, Blue Book of Evidence (Bancroft-Whitney ed of 1914).] Among our cases wherein this evidentiary prac-

tice has been upheld, on direct examination as well as cross-examination, are *Beaubien v Cicotte,* 12 Mich 459 (1864); *Stone v The Standard Life & Accident Insurance Co,* 71 Mich 81; 38 NW 710 (1888); *Prentis v Bates,* 88 Mich 567; 50 NW 637 (1891); *Pickard v Bryant,* 92 Mich 430; 52 NW 788 (1892); *People v Case,* 105 Mich 92; 62 NW 1017 (1895); *People v Palmer,* 105 Mich 568; 63 NW 656 (1895); *People v O'Neill,* 107 Mich 556; 65 NW 540 (1895); *Dillon v Pinch,* 110 Mich 149; 67 NW 1113 (1896); *People v Johnson,* 186 Mich 516; 152 NW 1096 (1915); *Bresch v Wolf,* 243 Mich 638; 220 NW 737 (1928); *Mitchell v DeVitt,* 313 Mich 428; 21 NW2d 111 (1946); *Higdon v Kelley* [339 Mich 209; 63 NW2d 592 (1954)].

"Admittedly, as in *Bresch,* the *rule relating to the refreshment of a witness' memory is largely one of judicial discretion."* (Emphasis supplied.)

The case was reversed "[f]or fair discretion the trial judge was just a little too hasty, and too far ahead of what might have been shown, when he found an effort to impeach rather than refresh", p 16; 187 NW2d 417. Further, the Court held that the fullest permissible examination into the question of the degree of intoxication was in order from a witness who had much knowledge on that question, p 12; 187 NW2d 414–415.

As to the allowance of defense's use of this statement, we find no abuse of discretion. We do note that the method chosen was incorrect in that the statement should initially have been shown to the witness for her perusal and comments. McCormick on Evidence (2d ed), § 28, p 56. Further, a review of the record does reveal that the witness manifested much difficulty in recalling details and in fact noted that, to some degree, the statement had revived some memory. Moreover, the statement was properly used for impeachment purposes as a prior inconsistent statement. McCormick (2d ed), § 36, p 70. *Cf. People v Nankervis,* 330 Mich 17, 20–21; 46 NW2d 592, 594–595 (1951). An inves-

tigator testified at trial that he had talked to Mrs. Skinner, written the statement, and that she had signed the statement. On this latter ground alone, the action of the trial court was not erroneous in that a right conclusion will not be disturbed on appeal even though based on wrong theory. 2 Michigan Law & Practice, Appeal, § 282, p 136. See, also, *People v Rodgers,* 36 Mich App 211, 223; 193 NW2d 412, 417 (1971), LEVIN, J., dissenting, adopted by Supreme Court in 388 Mich 513, 519; 201 NW2d 621, 624 (1972).

We can here see no substantial injustice arising from the trial court's decision as credibility must have been a major factor in the outcome of this case. The jury is the sole judge of credibility of witnesses and the weight to be accorded their testimony. *Obeginski v James,* 4 Mich App 90, 93; 143 NW2d 579, 581 (1966).

"[T]he meaning of impeachment, which is not a matter of law for the court, but [is] an evidentiary question of what may properly be laid before a jury to assist it in judging the credibility of witnesses. The trial judge properly left this to the jury." *Winekoff v Neisner's Automotive Supply, Inc,* 12 Mich App 51, 54; 162 NW2d 341, 343 (1968).

Prior statements, introduced for impeachment purposes, bear solely upon the credibility of the witness and are not considered for the purpose of establishing the substance or truth of the prior statements. *Gabrish v Morse,* 361 Mich 39, 43; 104 NW2d 757, 759 (1960). *Cf. Osberry v Watters,* 7 Mich App 258, 262–263; 151 NW2d 372, 374–375 (1967); and *Gorman v McCleaf,* 369 Mich 237, 241; 119 NW2d 636, 638 (1963). We here find that whatever error may have occurred caused no prej-

udice to the plaintiffs. See, generally, *Oppenheim v Rattner,* 6 Mich App 554, 559; 149 NW2d 881, 883 (1967).

## II

A deposition was taken from Mrs. Shirley Jean Childs in Huntsville, Alabama, for discovery, pursuant to Michigan Court Rules pertaining to depositions and their admissions. GCR 1963, 302. Mrs. Childs was unavailable at the time of trial. The deposition was read into evidence. The portions to which the plaintiffs have objected refer to a statement taken from Mrs. Childs and her then husband, Norman, by an investigator. This statement was signed by both Norman and Mrs. Childs and initialed. The plaintiffs objected on the ground that any reference to the statement, which, they assert, was basically Norman's, was hearsay. The defense answered saying that the statement was adopted by Mrs. Childs and that it was an admissible exception to the hearsay rule as being a part of the res gestae. Moreover, defendant asserts that this was properly used and admitted for the purpose of impeachment.

It appears that Mr. and Mrs. Childs were in the company of the decedent at various times and places during the course of the day in which the accident occurred. Mrs. Childs said in the deposition that she personally gave a statement to no one and that she was in the kitchen of their home while her husband was giving the statement.[2] The following excerpt from the trial transcript is demonstrative of the problem we here face.

---

[2] Norman Childs was not called as a witness. A deposition was taken from Mr. Childs on June 3, 1972, in Nashville, Tennessee. It was not introduced at trial.

" '*Q. [Mr. Baun, defense attorney]:* And you signed those, didn't you, Ma'am?

" '*A.* I signed something and I don't remember what they were.

" '*Q.* Is this your signature on here?

" '*A.* I told you it looks like my signature.

" '*Q.* Did you read the pages?

" '*A.* No.

" '*Q.* Why not?

" '*A.* Norman was sitting there. He read them and said it was all right.'

"*Mr. Langton [plaintiffs' attorney]:* I object to anything that Norman said.

"*The Court:* Overruled.

" '*Q.* All right. Now, did you hear your husband tell this man on February 2, 1971 in your house at—'

"*Mr. Langton:* I object, your Honor.

"*Mr. Baun:* Make your objections.

"*Mr. Langton:* I object—

"*The Court:* Overruled.

"*Mr. Langton:* To what she heard her husband say. That's hearsay.

"*The Court:* Overruled.

" '*Q.* Did you hear your husband say at that time that Mr. James Durbin was intoxicated when he left the Colonial Lanes?

" '*A.* I didn't hear anything he said. I heard very little of it.

" '*Q.* And did you hear your husband tell the investigator that Mr. Durbin's speech was not slurred and he did not stagger and his eyes were not bloodshot in the Colonial Lanes?

" '*A.* No.

" '*Q.* And yet you signed this statement where he did say that?

" '*A.* As I said—'

"*Mr. Langton:* Objection. There is no foundation laid. We made a record on this.

" '*Q.* Your husband did say to you, " 'Well, it's okay, go ahead and sign this paper.' "?

" '*A.* Yes.'

"*Mr. Langton:* Objection, your Honor.

" '*Q.* These look like the papers, don't they?'

"*Mr. Langton:* Objection, your Honor. I have an objection, your Honor.

"*The Court:* Overruled."

In passing upon admissibility, the trial court said:

"It's the opinion of this court that the testimony of Mrs. Skinner, Mrs. Simi and the deposition of Mrs. Childs is highly suspect. Fortunately, the jury has not gotten into the problem with Mr. Childs, but as far as this court is concerned these are all going to be facts for the jury to determine—why it is that these parties would make statements and sign statements on one date and then reverse themselves on another, and as I say, the statement of Mr. Childs and what he got himself involved in, which isn't going to be before the jury, should not prejudice them. These statements are going to be, I think, should all go before the jury. Let them make up their minds when are these people telling the truth and when are they not.

"As to the exhibits, with reference to the exhibits specifically they state, 'I have read this, and it is correct.' There are corrections all along the way with her initials. Now that is, to me, enough to go to the jury and let the jury decide. They heard, the jury heard her testimony. They heard what she said about her statement, and so let's let the jury have everything. Let them find out what part they are going to believe and what part they aren't going to believe. That's the reason they are here, they are here to discover the truth."

In *Rice v Jackson,* 1 Mich App 105, 110; 134 NW2d 366, 368 (1965), Judge (now Justice) FITZ-GERALD wrote:

"The hearsay rule 'prohibits the use of a person's assertion, as equivalent to testimony of the fact asserted, unless the asserter is brought to testify in court on the stand, where he may be probed and cross-exam-

ined as to the grounds of his assertion and of his qualifications to make it' (5 Wigmore on Evidence [3d ed], § 1364, p 9). In application, if a witness in court testified to what another person out of court stated to him and the court or jury is asked to believe that the statement is true, this testimony would be hearsay and not admissible in evidence.

"Hearsay is generally prohibited because credibility depends not on the sworn and cross-examined witness, but on the unsworn and un-cross-examined, absent narrator. (2 Jones on Evidence [5th ed], § 268, p 514.)"

See, also, 5 Callaghan's Michigan Pleading & Practice (2d ed), Evidence, § 36.470, pp 8–9; and *Greenman v O'Riley,* 144 Mich 534, 539; 108 NW 421, 423 (1906).

An adoptive admission is the express adoption of another's statement as one's own. It is conduct on the *part of a party* which manifests circumstantially that party's assent in the truth of a statement made by another. The mere fact that a party had declared that he or another person made the statement is not in and of itself sufficient for a finding of adoption. In order to find adoptive approval of the other's statement the circumstances surrounging the other's declaration must be examined. McCormick (2d ed), § 269, p 649. Mrs. Childs stated that she signed the statement only at the request of her husband. The circumstances do not suffice for a finding of an adoptive admission and, moreover, in the normal course of affairs, adoptive admissions refer only to party-opponents. Mrs. Childs was a witness, not a party. See *Thompson v Village of Mecosta,* 141 Mich 175, 179–180; 104 NW 694, 695 (1905); *cf. Ruhala v Roby,* 379 Mich 102, 113; 150 NW2d 146, 150 (1967).

*Rice v Jackson, supra,* 111; 134 NW2d 368, sets out the standards by which to review assertions of res gestae exceptions to the hearsay rule.

"In Michigan, the law regarding *res gestae* is clear. From *Rogers v Saginaw-Bay City R Co,* 187 Mich 490; 153 NW 784 (1915), to *Holtz v L J Beal & Son, Inc.* 339 Mich 235; 63 NW2d 627 (1954), the conditions upon which such statements will be allowed in evidence are (1) that there is a startling occasion, startling enough to produce nervous excitement, and render the utterance spontaneous and unreflecting; (2) that the statement must have been made before there has been time to contrive and misrepresent; and (3) the statement must relate to the circumstances of the occurrence preceding it.

"The 'startling occasion' called for under point (1) has been applied by the Michigan Supreme Court to explosions, collisions, accidental injuries, shootings, and a variety of occurrences."

While the statement referred to in the deposition related the circumstances of the occurrence, the utterance was not spontaneous and unreflected and there certainly was time to contrive and misrepresent. Thus, it is readily apparent that the statement here in question is not within the res gestae exception.

It is further apparent that, as Mrs. Childs was unavailable at the time of trial, the necessity for the introduction of reference to the statement was not shown. Thus, there was an insufficient foundation laid. See *Ebel v Saginaw County Board of Road Commissioners,* 386 Mich 598, 608; 194 NW2d 365, 369 (1972); *cf. Ruhala, supra,* p 115; 150 NW2d 151.

As the witness was unavailable at trial for cross-examination and it has not been shown that the statement was hers for impeachment purposes, its use was erroneous. However, in review of six volumes of transcript from this seven-day trial, we cannot see that plaintiffs were prejudiced so as to warrant reversal and another trial. Mrs. Skinner testified to basically the same material as Mrs.

Childs. Further, another individual who was present at the Colonial Lanes was produced by plaintiffs. A review of the entire cause does not show that the error has resulted in substantial injustice.[3] GCR 1963, 529.1.

## III

The trial court refused to allow testimony of decedent's drinking habits by Mrs. Durbin on the bases of lack of foundation, conclusion, and that it would be self-serving. Plaintiffs contend that Mrs. Durbin had 14 years of experience in dealing with the deceased's drinking capacity and habits and, as such, her testimony would have been confined to facts within her personal knowledge and observation, and state that numerous cases have held that evidence of habit is admissible to show like conduct on the occasion in question. The cited cases are distinguishable, *e.g., Hoffman v Rengo Oil Co, Inc,* 20 Mich App 575; 174 NW2d 155 (1969). In *Hoffman* plaintiff's decedent was struck by a motor vehicle while crossing a highway. The path followed by the deceased was disputed. The Court held, per curiam, that evidence of habit was admissible to show the probable path the decedent took on the day in question. Likewise, the cases upon which the plaintiffs have relied for the proposition that "[i]n numerous actions by a wife, widow, or mother for damages for the unlawful sale of intoxicating liquor to her husband or minor

---

[3] We do note that it would have been well for the trial court to have given a cautionary instruction that the statement was not to be used as substantive evidence. *People v Durkee,* 369 Mich 618, 627; 120 NW2d 729, 733 (1963). The trial court here cautioned that the statement should be considered only as to whether it was the adopted statement of Mrs. Childs. While harmless, this instruction was deficient.

son, evidence has been held admissible to the drinking habits of the husband or son", are distinguishable. *Sisson v Lampert,* 159 Mich 509; 124 NW 513 (1910), was an action against two saloon keepers to recover damages caused by the death of plaintiff's husband while intoxicated on the ground that the intoxication was induced by liquor sold by the two dealers. The Court held that there was no error in permitting various witnesses to testify as to the intoxicated condition of the deceased on the day of his death. The Court went on to hold that testimony as to the decedent's drinking habits was competent and admissible. There is, however, nothing in the opinion to indicate that such testimony was given by decedent's wife or other relatives. *Brockway v Patterson,* 72 Mich 122, 129; 40 NW 192, 195 (1888), held that testimony as to decedent's drinking habits was admissible as "a pertinent subject of inquiry *as bearing upon the question of damages".* (Emphasis supplied.)

In cases of similar peripheral analogy testimony has been excluded as being self-serving, *e.g., Meyers v Ermolik,* 301 Mich 284, 290; 3 NW2d 276, 279 (1942). McCormick has written:

"[T]he judge should possess the discretion usual in this field of circumstantial evidence to exclude if the habit is not sufficiently regular and uniform, or the circumstances sufficiently similar, to outweigh the danger, if any, of prejudice or confusion." § 195, p 463.

Due to the fact that the testimony could indeed be viewed as self-serving and that the decedent's wife had no personal knowledge of his state of intoxication on the day in question, we can discern no abuse of discretion in the disallowance of this testimony.

## IV

Plaintiffs question hypothetical questions posed by defense counsel in the cross-examination of one witness and the direct examination of another. Plaintiffs assert that the elicited testimony was "based on facts not justified by the evidence" and assumed facts deviating from the testimony and relying on rebutted facts.

*Hypothetical questions to expert witnesses must be based on firsthand knowledge or upon facts in the record at the time the expert gives his opinion or a combination of these two facts. McCormick, supra, § 14, p 31; In re Anderson Estate,* 353 Mich 169, 177; 91 NW2d 356, 360 (1958). In *Bosch v Damm,* 296 Mich 522, 528–529; 296 NW 669, 671 (1941), Justice BUSHNELL wrote:

"One of the requisites of rendering opinion testimony competent, under the record being reviewed, is that there shall be produced before the jury testimony of the facts and circumstances upon which the expert bases his opinion. This is of first importance, because if any essential fact on which the opinion is based is not found by the jury to exist, the answer of the witness is *(Ballance v Dunnington,* 241 Mich 383; 217 NW 329 [1928]; 57 ALR 262; *Thornton v Berry,* 259 Mich 529; 244 NW 152 [1932]) without probative force and must be disregarded by the jury. To propound a question which in a wholesale fashion permits an expert witness to base his opinion answer on 'other circumstances that you found existing out there,' without in any way indicating in the question what circumstances or facts are included therein, wholly prevents the jury from fairly and intelligently weighing and applying the answer of the expert.

" 'Counsel, in propounding a hypothetical question to an expert witness, may assume any state of facts which the evidence tends to establish, and may vary the questions so as to cover and present the different theo-

ries of fact. But there must be evidence in the case tending to establish all of the facts stated in the question.' *Russ v Railway Company,* 112 Mo 45; 20 SW 472; 18 LRA 823 [1892]."

A careful review of the record does not reveal that it is "entirely barren of facts forming a basis for the hypothetical questions" as in *Mapes v Berkowitz,* 304 Mich 278, 283; 8 NW2d 65, 67 (1943). We do not find that the questions propounded by defense counsel were completely afield of the issues at trial, nor did they seek abstract answers. Further, the court refused a question, propounded by plaintiffs, based upon a hypothetical man who could drink "nine bottles of beer in one hour" which found no supporting facts on the record.

We find that plaintiffs have not carried their burden of showing clearly that any error, prejudicial or otherwise, occurred.

## V

Plaintiffs claim that reversible error was committed by (1) the trial court's refusal to read the dramshop act, MCLA 436.22; MSA 18.993, in its entirety; (2) the trial court's refusal to give standard jury instruction 1.03 pertaining to circumstantial evidence; and (3) the trial court's refusal to read to the jury the statute regarding the presumption of intoxication, MCLA 257.625a; MSA 9.2325(1). As to the dramshop act, the trial court instructed the jury as follows:

"Now, the substance of the act, and I am going to read it—I am going to read the important part right from the statute, it is as follows:

" 'Every wife, husband, child, parent, guardian or other person who shall be injured in person or property,

means of support or otherwise, by an intoxicated person by reason of the unlawful selling, giving or furnishing to any such person any intoxicating liquor, shall have a right of action in his or her name against the person who shall by such selling or giving of any such liquor have caused or contributed to the intoxication of said person or persons or who shall have caused or contributed to any such injuries.' "

Plaintiffs specifically objected to the court's failure to instruct on the dramshop statute in its entirety and have thus saved this issue for appeal. GCR 1963, 516.2.

"It is a time-honored rule that the failure to give legally accurate, properly requested instructions in the precise language submitted is not error, *providing the substance is embodied in the instructions as given.* Thus, in the instant case we must view the instructions as a whole with this principle in mind." (Emphasis in original.) *McKine v Sydor,* 387 Mich 82, 86; 194 NW2d 841, 843 (1972).

See, also, *Britten v Updyke,* 357 Mich 466, 473; 98 NW2d 660, 664 (1959); *People v Spaulding,* 42 Mich App 492, 496; 202 NW2d 450, 452 (1972), *lv den,* 388 Mich 809 (1972); and *Shreve v Leavitt,* 51 Mich App 235; 214 NW2d 739 (1974).

The instructions, *in toto,* adequately informed the jury that any person who sold intoxicating liquor to an intoxicated person would be liable for any injuries sustained as a result of the intoxication. Plaintiffs have not been prejudiced by the trial court's excerpting from the statute.

The admissibility of circumstantial evidence is a well recognized principle and not subject to challenge. *Villa v Golich,* 42 Mich App 86, 88–89; 201 NW2d 349, 351 (1972). An action under the dramshop act may be proved by circumstantial evidence, *Mason v Lovins,* 24 Mich App 101; 180

NW2d 73 (1970); finding for plaintiffs may be founded upon inferences drawn from such circumstantial evidence, *Fletcher v Flynn,* 368 Mich 328, 334; 118 NW2d 229, 232 (1962).

The instruction given the jury reads:

"In determining whether any fact has been proved, you shall consider all of the evidence bearing on that fact without regard to which party produced the evidence. You have a right to consider all the evidence in the light of your own general knowledge and experience in the affairs of life and to take into account whether any particular evidence seems reasonable and probable."

Due to much conflicting testimony, it is difficult to discern what inferences the jury might have drawn. Moreover, circumstantial evidence was not required, as there was direct evidence. See 29 Am Jur 2d, Evidence, § 264, p 312. We find no error or prejudice in this issue. See, generally, *Nowicki v Suddeth,* 7 Mich App 503, 511–512; 152 NW2d 33, 37 (1967).

As to plaintiffs' assertion of error in not instructing on the presumption of intoxication found in MCLA 257.625a; MSA 9.2325(1),[4] no objection was made. Accordingly, this issue has not been properly perfected for appeal and, finding no manifest injustice, we do not pass thereupon. GCR 1963, 516.2.

## VI

The granting or denying of a motion for new

---

[4] The jury was instructed as to intoxication, thusly:

"Now, the definition for 'intoxicated' is: 'A person is " 'intoxicated' " when, as a result of drinking intoxicating liquors, his mental or physical senses are impaired.' The definition for 'intoxicating liquor' is: 'Intoxicating liquor, includes beer and wine as well as other alcoholic beverages.' "

trial rests within the sound discretion of the trial court and reversal of such order is a function of whether prejudicial error was committed and an abuse of discretion is found. *Witt v Chrysler Corp,* 15 Mich App 576, 579; 167 NW2d 100, 102 (1969); *Parker v Severn,* 37 Mich App 231, 232; 194 NW2d 432, 433 (1971). Having found no prejudicial error and no abuse of discretion, the trial court was correct in denying plaintiffs' motion.

## VII

Finally, plaintiffs-appellants contend that the jury verdict was against the great weight of the evidence.

This Court will not substitute its judgment for that of the jury unless a careful review of the record reveals a miscarriage of justice. *Williams v Fiedlar,* 22 Mich App 179; 177 NW2d 461 (1970), *aff'd,* 386 Mich 221; 191 NW2d 52 (1971). Judge (now Justice) LEVIN has written:

"In an action under the dramshop act, the plaintiff has the burden of proving that the defendant tavern sold intoxicating beverages to a person who, at the time of sale, was already intoxicated, and that there is a causal connection between the unlawful sale and the injuries for which the plaintiff seeks to recover." *Mason v Lovins,* 24 Mich App 101, 106; 180 NW2d 73, 75 (1970).

We may not substitute an alternate determination as we find no miscarriage of justice. It appears that plaintiffs merely did not carry their burden to the satisfaction of the jurors. It is noteworthy that the verdict was unanimous.

Moreover, testimony revealed that the decedent had absented himself from the defendant's place of

business for some five or more hours before the accident occurred.

Affirmed. Costs to appellees.

All concurred.