PEOPLE v BENTLEY

1. ARREST—WITHOUT WARRANT—PROBABLE CAUSE.

A police officer may arrest a person without a warrant when he has reasonable cause to believe a felony has been committed and reasonable cause to believe that the person arrested committed it. (MCLA 764.15[d]).

2. CRIMINAL LAW—INDIGENTS—RIGHT TO COUNSEL—CHANGE OF COUNSEL.

An indigent defendant is entitled to counsel, but he is not entitled to counsel of his choice nor is he entitled to different counsel whenever and for whatever reason dissatisfaction arises with counsel provided for him; a trial judge did not err in requiring a defendant to proceed with his appointed counsel who had already once tried his case where defendant could have elected to proceed *in propria persona,* but did not, and advanced no persuasive arguments to support his motion for a change of counsel.

3. EVIDENCE—HEARSAY—MEMORANDA—PRESENT RECOLLECTION REVIVED.

An essential requirement in using memoranda to revive the present recollection of a witness who testifies therefrom is the necessity to resort to memoranda to refresh the memory, but a trial court's failure to establish that fact upon the record did not constitute prejudicial error where the witness was a police officer, it was obvious that he could not have testified with particularity regarding events which transpired some five months previously unless he refreshed his memory by reference to a report, and defense counsel recognized this fact by conceding in his objection that the witness could use the memoranda to refresh his memory.

REFERENCES FOR POINTS IN HEADNOTES
[1] 5 Am Jur 2d, Arrest §§ 26, 28.
[2] 21 Am Jur 2d, Criminal Law §§ 318–323.
[3] 58 Am Jur, Witnesses § 579.
[4] 21 Am Jur 2d, Criminal Law §§ 540, 592, 614.

4. CRIMINAL LAW—STATUTES—SENTENCE—INDETERMINATE SENTENCE.

> A sentence of four to five years violates the indeterminate sentence statute, and the Court of Appeals will, when the maximum penalty for the crime for which defendant was convicted is five years, reduce the minimum sentence to three years and four months (MCLA 769.8; GCR 1963, 820.1[7]).

Appeal from Recorder's Court of Detroit, Thomas L. Poindexter, J. Submitted Division 1 March 8, 1973, at Detroit. (Docket No. 12681.) Decided May 22, 1973.

Albert J. Bentley was convicted of attempted breaking and entering with intent to commit larceny. Defendant appeals. Affirmed, with sentence modified.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Dominick R. Carnovale,* Chief, Appellate Department, and *Thomas M. Khalil,* Assistant Prosecuting Attorney, for the people.

*Gerald S. Jurowiec,* for the defendant.

Before: GILLIS, P. J., and MCGREGOR and ADAMS,* JJ.

ADAMS, J. Defendant appeals his conviction and sentence for attempted breaking and entering with intent to commit larceny. MCLA 750.92; MSA 28.287; MCLA 750.110; MSA 28.305.

Vol Pentero lived in an apartment located over his store at 12226 Woodrow Wilson in the city of Detroit. On February 13, 1971 he closed the store at 10:30 p.m. and locked the front door. The door had two boards nailed across it because the glass was broken. The next morning at about 5:30 he

---

* Former Supreme Court Justice, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

was awakened by the barking of his dog which he kept in the store. As he listened, he heard a plank fall. Looking out his front window, located above the front door of the store, he could see only someone's legs because the store entrance was recessed. He fired a shot. One man ran out with a bar in his hand, dropped the bar, jumped into a car, and drove off. The second person refused to come out, stating he would not come out and get killed. Pentero's wife handed him his clothes and he dressed while talking to the man through the open window. Then he quickly ran downstairs, snatched open the door and confronted defendant, whom he held at gunpoint until the police came.

Patrolmen James Benci and Robert McGhee arrived at the scene first and observed Pentero holding defendant at gunpoint. When asked for identification, Bentley produced a receipt for a car from the Econ-O-Car Rental Service with his name on it. The receipt was received in evidence at the trial without objection after defendant's attorney had earlier objected on the ground that no foundation had been laid and had then questioned Mc-Ghee regarding the document.

Patrolmen Kenneth Evans and Arnold Vann investigated the scene. Evans noticed a plywood board lying inside the doorway of the store. It apparently had originally been nailed to the bottom portion of the doorway.

Patrolmen Benci and McGhee left the scene to answer a radio run to the Highland Park General Hospital to investigate a man being treated there for a gunshot wound. They searched the patient's personal property, identified him as codefendant Lee Wells, and found a set of keys bearing the name Econ-O-Car Rental Service, the same name as that found on the receipt taken from Bentley.

On June 24, 1971 defendant, represented by court-appointed counsel, was tried individually in Detroit Recorder's Court on a charge of attempted breaking and entering of a business place with intent to commit larceny, MCLA 750.92; MSA 28.287; MCLA 750.110; MSA 28.305. This trial concluded in a mistrial because of a hung jury.

On July 16, 1971 defendant, *in propria persona,* moved for a change of attorney. The motion was denied on July 19, 1971, at which time defendant and codefendant Wells were tried jointly before a jury. At this trial Dr. Joachim Bogani testified that he had removed a bullet from codefendant Wells. The bullet had struck Wells in the left shoulder and had caused extensive internal damage. A police ballistics expert testified that the bullet removed from Wells had been fired from Pentero's gun. Defendant was convicted on July 20, 1971 and was subsequently sentenced to a prison term of four to five years.

On September 7, 1971 new counsel was appointed to represent defendant in post-conviction proceedings.

### Issue I

*Was there probable cause to arrest defendant where the arresting officers responded to a police radio report, spoke to the complainant who was holding defendant at gunpoint, and observed the scene?*

While cruising near the scene of the crime, police officers Benci and McGhee heard a police radio report stating that a suspect was being held for breaking and entering at 12226 Woodrow Wilson. Benci and McGhee went to the scene, found complainant Pentero holding defendant at gun-

point, spoke with Pentero and arrested defendant for investigation of breaking and entering.

On direct examination Officer McGhee testified:

"*Q.* Now, when you arrived on the scene what did you find?

"*A.* When—we seen the owner of the place with a gun on the—on Mr. Bentley right there *(indicating)*, second man behind his lawyer.

"*Q.* And what did you do when you observed that?

"*A.* I don't understand—

"*Q.* What did you do next as—after you saw this?

"*A.* Well, we asked—we talked to the owner of the place and then we placed the defendant, Mr. Bentley, under arrest.

"*Q.* And by the defendant you mean Mr. Bentley?

"*A.* Yes."

During cross-examination McGhee stated:

"*Q.* You can't recall that—now, was he under arrest at that time?

"*A.* Yes, we had placed him under arrest.

"*Q.* What?

"*A.* Yes, we had placed him under arrest.

"*Q.* Did you tell him that?

"*A.* Yes.

"*Q.* And did you tell him why you were placing him under arrest?

"*A.* We didn't tell him why, no.

"*Q.* What?

"*A.* We told him he was placed under arrest for investigation of breaking and entering. I couldn't tell him why he was being arrest *[sic]* for; I didn't know—I told him he was being arrested for investigation of breaking and entering.

"*Q.* What did you see, if anything, other than words, passed by the complainant to you, and was it made in the presence of this defendant?

"*The Court:* Let me ask this question, Mr. Smith: When you came on the scene, you say the owner of the

store had a gun pointed at the defendant, Bentley. Did he tell you why—did he tell you why he had the gun on him at that time?

"*A.* Well, at first, when we were in the scout car, 10-1 had received a run to this address that one was holding one at gunpoint at the—for B and E.

"*The Court:* In other words, you had information by way of teletype or police radio that he was held for breaking and entering; is that correct?

"*A.* Yes, that's correct.

"*The Court:* The court will rule that there was a proper arrest in this case, Mr. Smith."

A police officer may arrest a person without a warrant when he has reasonable cause to believe a felony has been committed and reasonable cause to believe that the arrestee committed it. MCLA 764.15(d); MSA 28.874(d).

Given the circumstances in this case, the arrest was clearly proper. The arresting officers had probable cause to arrest, based upon the police radio report, their conversation with complainant and their observation of the scene. Defendant was informed that he was being arrested for investigation of breaking and entering. There was no error.

## *Issue II*

*Did the trial court abuse its discretion by refusing to grant an adjournment requested by defendant for the purpose of obtaining new counsel?*

On July 19, 1971, before commencing the second trial, the trial judge considered defendant's motion for a change of attorney. The following colloquy occurred:

"*The Court:* The court has received a motion for a change of attorneys in this case. What are your reasons and why do you think Mr. Chester Smith should be replaced as your attorney in this case?

"*Defendant Bentley:* First of all, your Honor, I have been in the county jail 5 months, 147 days to be exact. My attorney, at no time, has ever seen and tried to develop a defense in this case. My conversations with Mr. Smith have been restricted to two or three minutes through a bullpen window. Upon trial, in my opinion, Mr. Smith did not defend me. He left the case very open, left it quite obvious to a jury that he was not attempting to defend me. As far as I am concerned, any effort now on the part of Mr. Smith would be token and insincere.

"*The Court:* Do you have another attorney that you have retained?

"*Defendant Bentley:* I am seeking an attorney of my choice.

"*The Court:* Have you hired one?

"*Defendant Bentley:* Not as of this moment; I am in the Wayne County Jail and have been for five months— and communication from the Wayne County Jail is very difficult.

"*The Court:* Well, in view of the fact that this is the second trial of this case and Mr. Smith is familiar with the proceedings that have transpired and is a capable and reputable attorney, your motion will be denied.

"*Defendant Bentley:* Your Honor, may I say something—in other words you are forcing me to go into court with Mr. Smith?

"*The Court:* I am not forcing you. The court has assigned you an attorney.

"*Defendant Bentley:* Well, then I ask you that I be removed back to the bullpen. Lock me up.

"*The Court:* You will take your seat at the counsel table."

From the above it will be seen that defendant did not propose to represent himself *in propria persona,* that he had not obtained other counsel, that his attorney had already tried the case once in a trial lasting from June 24 to June 28, 1971, and that in the opinion of the court the attorney was a capable and reputable lawyer. Defense coun-

sel stated that he had in fact consulted with defendant at the county jail.

An indigent defendant is entitled to counsel. He is not entitled to counsel of his choice nor is he entitled to different counsel whenever and for whatever reason dissatisfaction arises with counsel provided for him. *People v Henley,* 26 Mich App 15, 26 (1970); *People v Grenier,* 34 Mich App 93 (1971); *People v Williams,* 2 Cal 3d 894; 88 Cal Rptr 208; 471 P2d 1008 (1970). In the trial of a case, the professional judgment of an attorney regarding trial tactics should prevail; otherwise he ceases to function in his professional capacity. In this case defendant could have elected to proceed *in propria persona.* Since he made no such election and advanced no persuasive arguments to support his motion for change of counsel, the trial judge did not err in requiring him to proceed with the appointed counsel who had already once tried his case.

## *Issue III*

*Did the trial court commit reversible error by allowing a police officer to testify from a preliminary complaint report made out by his partner, without first specifically determining that the officer had no present recollection of the events?*

Officer McGhee had in his hands while testifying a preliminary complaint report which had been prepared at 7 a.m. on February 13, 1971 in his presence by his partner, Officer Benci, and which was signed by McGhee. Defense counsel objected to the use of the document. The trial judge thereupon questioned McGhee regarding the history of the report and then allowed the officer to use the document, apparently to refresh his recollection. See *People v Rosborough,* 387 Mich 183, 195–196

(1972), as to the correct procedure with regard to refreshing an officer's present recollection as opposed to the introduction of a document as past recollection recorded.

Michigan case law holds that "[a]n essential requirement in using memoranda to revive the present recollection of a witness who testifies therefrom is the necessity to resort to memoranda to refresh the memory". *Battle Creek Food Co v Kirkland,* 298 Mich 515, 527 (1941) (dictum).[1] While the trial judge in the case at bar should have established upon the record that McGhee's recourse to the preliminary complaint report was necessitated by his loss of memory, we conclude that under the facts of this case the court's omission did not constitute prejudicial error.

It appears obvious that Officer McGhee could not have testified with particularity regarding events which transpired some five months previously unless he refreshed his memory by reference to the report. Defense counsel recognized this by conceding in his objection that "I think [McGhee] can use that to refresh his memory but I don't want him to read from that". The objection was intended to preclude McGhee's reading verbatim from the report, not to prevent his mere reference thereto. Following this objection, the trial judge interrogated McGhee and established the history and authenticity of the report.

The primary issue at this point in the trial proceedings was the admissibility of the Econ-O-Car Rental Service receipt. When this receipt was offered in evidence soon afterward, defendant's attorney stated that he had no objection to its admission.

There was no reversible error.

---

[1] This rule is criticized in McCormick, Evidence (2d ed), § 9, p 18.

## Issue IV

*Was sufficient evidence adduced at trial to allow the jury to find defendant guilty beyond a reasonable doubt?*

A summary of the evidence in this case has been stated above. We conclude that the evidence was sufficient to support a jury verdict of guilty beyond a reasonable doubt.

## Issue V

*Is defendant's sentence improper?*

Defendant contends that his sentence of four to five years' imprisonment violates the indeterminate sentence statute, MCLA 769.8; MSA 28.1080. Defendant's claim of appeal was filed on September 30, 1971.

Since the maximum penalty for the crime of which defendant was convicted is five years' imprisonment, MCLA 750.92; MSA 28.287; MCLA 750.110; MSA 28.305, the legal principle recently enunciated in *People v Tanner,* 387 Mich 683 (1972), is applicable. We therefore order defendant's minimum sentence reduced to three years and four months. GCR 1963, 820.1(7).

Affirmed as modified.

All concurred.