PEOPLE v TREADWELL

1. HOMICIDE—FIRST-DEGREE MURDER—PREMEDITATION AND DELIBERA-
   TION—THOUGHT—SECOND LOOK—CIRCUMSTANTIAL EVIDENCE—
   INFERENCES—JURIES.

   The adduced facts in a trial for first-degree murder must show
   that a defendant thought about the homicide beforehand and
   that he had an opportunity for a second look or reflection
   before committing the act; the jury may infer premeditation
   and deliberation in the thought processes of the defendant from
   sufficient circumstantial evidence.

2. CRIMINAL LAW—INSTRUCTIONS TO JURY—LESSER-INCLUDED OF-
   FENSES—EVIDENCE—REQUEST TO CHARGE—AFFIRMATIVE EXCLU-
   SION.

   A court may not affirmatively preclude from the jury's considera-
   tions a lesser included offense of the crime charged which is
   supported by the evidence but on which defense counsel has not
   requested an instruction, but an affirmative exclusion of that
   which neither litigant wishes the jury to consider does not
   require reversal or a new trial.

3. CRIMINAL LAW—INSTRUCTIONS TO JURY—LESSER-INCLUDED OF-
   FENSES—TRIAL TACTICS—EXCLUSION—ERROR.

   A defendant who specifically rejected an instruction on lesser-
   included offenses of first-degree murder as a trial tactic in the
   hope of obtaining an acquittal cannot rely on his own error as
   a ground to set aside a subsequent jury conviction.

4. CRIMINAL LAW—INSTRUCTIONS TO JURY—UNANIMITY OF VERDICT—
   PRESUMPTION OF INNOCENCE—REASONABLE DOUBT.

   A jury instruction that the defendant is presumed innocent "until
   you and each and every one of you are satisfied beyond a
   reasonable doubt of the defendant's guilt" complies with the

REFERENCES FOR POINTS IN HEADNOTES
[1] 40 Am Jur 2d, Homicide § 509.
[2, 3] 21 Am Jur 2d, Criminal Law §§ 185, 494.
[4] 75 Am Jur 2d, Trial § 762 *et seq.*
  Presumption of innocence as evidence. 152 ALR 626.

requirement that the jury be instructed that the verdict must be unanimous.

Appeal from Recorder's Court of Detroit, Robert J. Colombo, J. Submitted May 8, 1975 at Detroit. (Docket No 21079.) Decided August 13, 1975.

Robert L. Treadwell was convicted of first-degree murder. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Patricia J. Boyle,* Principal Attorney, Research, Training and Appeals and *Steven Rabinovitz,* Assistant Prosecuting Attorney, for the people.

*Lawrence R. Greene,* for defendant on appeal.

Before: BASHARA, P. J., and R. B. BURNS and M. J. KELLY, JJ.

BASHARA, J. Defendant was convicted by a jury of first-degree murder contrary to MCLA 750.316; MSA 28.548, and appeals.

Defendant's first contention on appeal is that there was insufficient evidence as to the elements of premeditation and deliberation. Therefore, an extended discussion and analysis of the facts is required.

On November 7, 1973, the deceased, Police Officer Moore of the Detroit Police Department, was on duty with Officer Prince and Sergeant Boyle in plain clothes in an unmarked police car. Moore was armed with a .44 magnum revolver.

At approximately 10:50 p.m., a vehicle was observed parked on the wrong side of Chippewa Street, which suddenly accelerated at a high rate of speed. The vehicle, pursued by the unmarked

police car, stopped after driving about one block. Three males exited, one from the driver's side and two from the passenger side. The police car was stopped approximately 10 feet behind and as the men exited, one stumbled and looked back into the headlights. He was later identified by both officers as the defendant. A shotgun was dropped by one of the passengers.

Sergeant Boyle proclaimed that they were police officers and ordered them to halt. Two fled in one direction and were followed by Prince and Boyle. They apprehended one of the two, Derrick Meeks, in a back yard. One fled across the street, followed by Officer Moore.

Two other officers received a radio message to patrol the area to check for an officer on foot chasing a suspect. At a driveway, an officer's black flashlight and a black beanie cap were discovered, along with Moore's body. A further search of the area revealed the presence of a live gunshell, however Officer Moore's revolver could not be found.

Dr. Bass, the Assistant Medical Examiner for Wayne County, performed an autopsy which revealed the cause of death was a gunshot wound to the left chest. He stated there was no gun powder or soot on the body which indicated the range of firing was not close. Dr. Bass also testified that he was not able to determine from the entrance of the bullet whether Officer Moore was running, standing or crouching when the fatal shot was fired. Further testimony established Officer Moore's service revolver left traces of gun powder when fired from less than three feet but did not leave powder traces when fired at more than four feet.

Edward Benson testified that he was currently

in Jackson Prison for parole violation and that in return for his testimony he had been promised immunity for any charge arising out of the incident in question. Benson testified that he had known both the defendant and Meeks for approximately 17 months. He stated Meeks and the defendant told him they were going to be evicted from their apartment and needed money. They asked Benson if he wanted to go on a stick-up. Defendant was carrying a sawed-off shotgun which Benson identified at trial.

Benson stated they drove around Detroit and observed the unmarked car which he took to be a police vehicle. Meeks verbalized similar thoughts. He testified that both he and defendant told Meeks to get on the freeway but Meeks said no, "the man" will stop me. Treadwell said, "I will take care of that". Meeks in his testimony recalled the defendant said something, but did not recall what.

Upon exiting the stopped car, Benson testified that defendant faced the police vehicle immediately behind them. Benson bumped into the defendant, causing him to drop his shotgun. Defendant was facing the police vehicle's headlights. He stated defendant was wearing a black hat.

Benson testified he fled from the car and followed Meeks. He emptied a bag of leaves on the ground and hid underneath them until early morning. Benson admitted that he was arrested about 5 a.m. on November 8, while walking on the service road in the area. He was covered with leaves and wearing a dark hat.

Based upon the information obtained from both Meeks and Benson, Police Officer Thompson, with a tracking dog, went to 3797 Waverly in the City of Detroit at approximately 7 a.m. on November

8th. The defendant was found in the basement, hiding under a blanket in a dresser drawer. Following defendant's removal from the basement, a search was conducted and a .44 magnum was found hidden in a storage shed under the stairs, about 20 to 25 feet from the dresser. A piece of hair on the left side of the gun was observed. A qualified expert testified that she had compared the hair found on the gun with some hair removed from decedent's head and found them similar in all characteristics: pigmentation, size of cuticle, size of medulla, diameter of strand, arrangement of medulla within the strand, scale pattern and number of scales per quarter-inch. She concluded both hairs could have originated from the same source.

Another expert testified that a fingerprint belonging to the defendant was found on the gun taken from the basement.

At trial defendant's principal defense was that some one other than he had committed the homicide.

Recently, our Supreme Court has decided two cases, *People v Vail,* 393 Mich 460; 227 NW2d 535 (1975), and *People v Hoffmeister,* 394 Mich 155; 229 NW2d 305 (1975), which consider the question of what evidence is necessary to establish premeditation and deliberation in a first-degree murder prosecution. In both cases, the Court either remanded for sentencing on second-degree murder or reversed a defendant's conviction because the evidence was lacking on this element. In *Vail, supra,* 468, 469, the Court quoting from *People v Morrin,* 31 Mich App 301, 328, 330; 187 NW2d 434 (1971), *lv den* 385 Mich 775 (1971), elaborated on the distinction between first and second-degree murder.

"First-degree and second-degree murder are separate offenses, carrying vastly different penalties, distinguished only by the requirement that a homicide punishable as first-degree murder be committed with premeditation and deliberation. If premeditation and deliberation are ill-defined, the jury is left with no objective standards upon which to base its verdict.

\* \* \*

"Accordingly, it underscores the difference between the statutory degree of murder to emphasize that premeditation and deliberation must be given independent meaning in a prosecution for first-degree murder. The ordinary meaning of the terms will suffice. *To premeditate is to think about beforehand; to deliberate is to measure and evaluate the major facets of a choice or problem. As a number of courts have pointed out, premeditation and deliberation characterize a thought process undistrubed by hot blood. While the minimum time necessary to exercise this process is incapable of exact determination, the interval between initial thought and ultimate action should be long enough to afford a reasonable man time to subject the nature of his response to a 'second look'."* (Emphasis supplied.)

The underscored language emphasized that in a first-degree murder prosecution the adduced facts at trial must show that a defendant thought about the homicide "beforehand" and that he had an opportunity for a "second look" or reflection before committing the act.

In this case, although no direct evidence was introduced to show that the defendant engaged in the thought process necessary to classify the homicide as premeditated and deliberate murder, there was sufficient circumstantial evidence for the jury to infer premeditation and deliberation: see *People v Hoffmeister, supra.*

Upon observing the unmarked police car, both Benson and Meeks testified that they felt if they departed, the police would stop them. Benson testi-

fied that defendant responded saying "I will take care of that". Meeks testified that defendant made a comment, but that he did not recall what defendant said. Upon exiting the automobile Benson testified that he stumbled into the defendant causing him to drop the shotgun the defendant was carrying. Meeks testified Benson was carrying the gun. In any event, although there was no testimony about the length of the interval between defendant's disparaging statement prior to fleeing and the shooting of Officer Moore, it is apparent at least a minute or two had elapsed. In addition there was testimony that Moore received a blunt blow to the head, which was not caused by a fall.

Officer Moore was carrying a .44 magnum revolver. The jury could find that the blow was delivered by defendant, in possession of Moore's revolver, which was later found with a hair, similar to that of Moore's, affixed to it.

No matter what the source of the blow, the gun or another blunt object, the jury could find that the blow was received prior to the gunshot wound. Of course there are an infinite number of possibilities; however, the jury could infer one of the two following: that defendant laid in wait for the pursuing officer, struck him with a blunt object, took his revolver from him while he was stunned and shot him; or, defendant, lying in wait, jumped the officer, wrestled with him, removed his gun from his grasp and struck him with it. In either case, it would not appear that the officer was shot during a struggle. The testimony established that Moore's clothing bore no gun powder. On the basis of the test firing, it was found that the gun left powder residue at three feet but not at four. Therefore, the jury could find that after incapacitating the officer, the defendant moved back from the prone

or near-prone officer and fired, allowing sufficient pause for a "second look".

Defendant contends that the trial judge erred in affirmatively excluding from the jury's consideration lesser-included offenses and that he *sua sponte* failed to instruct them properly. Immediately prior to final arguments, defense counsel requested that the judge instruct the jury on only first-degree murder or not guilty.[1] The prosecution had no objection and the court ruled that it would so instruct. Shortly after the jury began deliberating, they asked the court if it was possible to recommend a lesser charge. The court after holding a conference with both parties informed the jury they had to consider the case as submitted to them.

This case is not one where the defendant did not request lesser instruction and the trial court, disregarding the fact that the evidence could support a lesser-included offense, affirmatively excluded from the jury's consideration such offenses. Given that situation, it would be error for the court to preclude the jury from consideration of a lesser-included offense. See *People v Lemmons,* 384 Mich 1; 178 NW2d 496 (1970), and *People v Membres,* 34 Mich App 224; 191 NW2d 66 (1971), *lv den* 386 Mich 790 (1972).

In *People v Charles Williams,* 36 Mich App 195; 193 NW2d 331 (1971), *lv den* 386 Mich 783 (1972), the trial court affirmatively excluded lesser-included offenses in its initial charge to the jury, where defendant's counsel asserted that there were no lesser-included offenses and that a charge including same would be inconsistent with his defense. This Court stated:

---

[1] The record affirmatively shows that the defendant and his mother joined in the request that the court not instruct on any lesser-included offenses.

"The distinction noted in Lemmons between a judge's failure to charge on included offenses and an affirmative exclusion should not be extended to a situation where the lawyer for the defendant agrees that there are no included offenses and additionally says that a statement covering included offenses would not be consistent with the theory of the defense. *An affirmative exclusion of that which neither litigant wishes the jury to consider does not require reversal or a new trial.*" *Williams, supra,* at 199. (Emphasis supplied.)

In *People v McDaniels,* 38 Mich App 174; 196 NW2d 25 (1972), *lv den* 387 Mich 787 (1972), this Court held that defendant's choice of a trial strategy precluded him from obtaining a new trial. Defendant had originally requested instructions on lesser-included offenses but the trial judge refused to instruct. After the jury had begun deliberation, the jurors inquired whether the verdict could be unarmed robbery. The court advised defendant's counsel that it would consider giving an additional instruction. Defense counsel requested that the original charge be retained. This Court stated:

"[T]he defendant specifically rejected the necessary curative instruction on lesser included offenses, chosing [sic] to abide by the original instruction in the hope of obtaining an acquittal on the armed robbery charge. This decision was based on the trial strategy of the defense. Obviously the defense read the problems of the jury as an indication that certain members of the jury had eliminated the armed robbery charge and consequently they would return a verdict of not guilty if they had no lesser included offenses to consider. Where, as here, the ultimate error is occasioned by a defense trial tactic which failed the defendant cannot rely on this error to set aside a jury conviction." *McDaniels, supra,* at 177.

Similarly, this case presents a situation where the defendant was actively pursuing a trial strat-

egy. He cannot now claim error because his tactics failed.

Defendant next contends, citing *People v Washington,* 43 Mich App 150; 203 NW2d 744 (1972), that the jury was not instructed that their verdict must be unanimous. This claim is totally without factual support. The trial court, while instructing on the presumption of innocence, informed the jury that his presumption remains "until you and each and every one of you are satisfied beyond a reasonable doubt of the defendant's guilt". Further, following the instructions the prosecutor asked the trial court whether the jury had been adequately informed of the unanaminity requirement. At this time defense counsel indicated it had been sufficiently covered.

Defendant's remaining assignments of error, having been considered, are without merit.

Affirmed.