PEOPLE v O'BRIEN

Docket No. 77-3389. Submitted November 7, 1978, at Lansing.—Decided May 1, 1979.

Defendant, Michael L. O'Brien, was convicted of first-degree murder in Oakland Circuit Court, Robert L. Templin, J. At trial, defendant objected to his then present attorney and requested a particular attorney be appointed to represent him. His request was denied. Defendant also requested a change of venue as a result of a pretrial labeling of him as a murderer in a brochure prepared by the prosecutor. The trial court took the request under advisement and, after seating a jury satisfactory to the defense before all of defendant's peremptory challenges were used, denied a change of venue. The evidence adduced at trial was that the victim, on the day of her disappearance, had missed her school bus and that on such occasions had been known to hitchhike. Her body was discovered in a wooded area the next day under circumstances indicating that the killer went to considerable trouble to conceal the body. Examination revealed that the victim had been struck on the head at least twice with a blunt, heavy object and that her throat had been

REFERENCES FOR POINTS IN HEADNOTES

[1] 5 Am Jur 2d, Appeal and Error §§ 772-775.
   21 Am Jur 2d, Criminal Law §§ 318-323.
   7 Am Jur 2d, Attorneys at Law § 148.
   Constitutionality protected right of indigent accused to appointment of counsel in state court prosecution. 93 ALR2d 747.
   Accused's right to counsel under the Federal Constitution Supreme Court cases. 18 L Ed 2d 1420.

[2] 77 Am Jur 2d, Venue § 73.
   Construction and effect of statutory provision for change of venue for the promotion of the convenience of witnesses and the ends of justice. 74 ALR2d 16.

[3] 40 Am Jur 2d, Homicide §§ 246, 263, 266, 425, 439, 454, 459, 468, 559, 560.
   Homicide: presumption of deliberation or premeditation from the circumstances attending the killing. 96 ALR2d 1435.

[4] 68 Am Jur 2d, Searches and Seizures §§ 16, 34, 57.
   Validity under Federal Constitution of warrantless search of automobile — Supreme Court cases. 26 L Ed 2d 893.

slashed afterwards. It also revealed that she had had sexual intercourse within 24 hours of her death. Evidence obtained from defendant's car indicated that the victim had been in the car and that there had been a struggle. On the morning that the body was discovered, the police learned that the day before a witness had seen a car parked near the site where the body was found and that there was a woman's purse with the contents strewn across the seats and a woman's coat in the back area of the car. While the witness was looking at the car, an individual called from a nearby field that, upon inquiry, stated alternatively that he was hunting and then that his dog was lost. The witness noted the license number of the car and the facts that the individual was not dressed for hunting and that he left alone. After receiving this information and a description of the individual, the police set up surveillance at the address listed on the registration of the license number, defendant's parents' house. The police spotted the car in the driveway and arrested defendant, who, they knew, had been previously involved in an incident in which a young woman had been left tied up in a field. During this time defendant's parents had to be kept away from the car on at least one occasion. The police had the car towed and impounded. Defendant appeals raising several issues. *Held:*

1. An indigent defendant is entitled to a substitution of appointed counsel only where discharge of the first attorney is for good cause and does not disrupt the judicial process; whether or not good cause exists depends on the facts and circumstances of each case and the Court of Appeals will reverse a trial court's determination only for an abuse of discretion.

2. The trial court committed no error in waiting until an attempt had been made to select a jury before ruling on the motion for a change of venue and, under the circumstances, in denying the motion after the jury was selected.

3. Premeditation and deliberation, being states of mind, need not be established by direct evidence but may be inferred by a defendant's conduct in light of the circumstances; however, such inferences must have an adequate basis in record evidence and, where there is an adequate evidentiary basis for the jury's finding of premeditation and deliberation in a homicide, the jury's determinations will not be disturbed on appeal.

4. The evidence presented was sufficient to support a charge to the jury on first-degree murder.

5. The police had probable cause sufficient to justify the

warrantless seizure and detention of defendant's car, and the warrant for the search was properly issued.

Affirmed.

1. Criminal Law — Attorney and Client — Court-Appointed Counsel — Substitution of Counsel — Appellate Review.

An indigent defendant is entitled to a substitution of appointed counsel only where discharge of the first attorney is for good cause and does not disrupt the judicial process; whether or not good cause exists depends on the facts and circumstances of each case and the Court of Appeals will reverse a trial court's determination only for an abuse of discretion.

2. Venue — Change of Venue.

A trial court commits no error in waiting until an attempt has been made to select a jury before ruling on a motion for a change of venue.

3. Homicide — Premeditation — Deliberation — Direct Evidence — Inferences — Defendant's Conduct — Basis in Record — Appeal and Error.

Premeditation and deliberation, being states of mind, need not be established by direct evidence but may be inferred by a defendant's conduct in light of the circumstances; however, such inferences must have an adequate basis in record evidence and, where there is an adequate evidentiary basis for a jury's findings of premediation and deliberation in a homicide, the jury's determinations will not be disturbed on appeal.

4. Searches and Seizures — Towing an Automobile.

The police activity of towing and impounding a car is a seizure subject to the Fourth Amendment's reasonableness requirement.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *L. Brooks Patterson,* Prosecuting Attorney, *Robert C. Williams,* Chief Appellate Counsel, and *Thomas S. Richards,* Assistant Prosecuting Attorney, for the people.

*Carlton R. Roeser,* for defendant on appeal.

Before: D. F. Walsh, P.J., and T. M. Burns and D. E. Holbrook, Jr., JJ.

T. M. BURNS, J. Defendant was convicted by a jury of first-degree murder, MCL 750.316; MSA 28.548, on July 26, 1977, and given the mandatory sentence of life imprisonment. Appellate counsel was routinely appointed and a brief raising a number of issues was filed with this Court. Defendant filed a brief on his own behalf raising additional issues. We affirm the first-degree murder conviction.

I

Just before the process of picking a jury began, defendant announced that he wished to have a particular attorney appointed to replace the attorney then serving him. Defendant listed six objections to continuing with his then present attorney. The opportunity for defense counsel to act on several of the points raised by defendant, such as questioning witnesses or objecting to prospective jurors, had not yet occurred. Defendant made no factual record supporting the other allegations, either at that time or before this appeal. See, *People v Ginther,* 390 Mich 436; 212 NW2d 922 (1973). After an extended discussion with defendant and his attorney, the trial court denied defendant's request.

The rules governing this question are well settled. As stated in *People v Bradley,* 54 Mich App 89, 95; 220 NW2d 305 (1974):

"An indigent defendant is entitled to counsel. He is not entitled to counsel of his choice nor is he entitled to different counsel whenever and for whatever reason dissatisfaction arises with counsel provided for him. *People v Henley,* 26 Mich App 15, 26; 182 NW2d 19 (1970); *People v Grenier,* 34 Mich App 93; 190 NW2d 742 (1971); *People v Williams,* 2 Cal 3d 894; 88 Cal Rptr 208; 471 P2d 1008 (1970); *People v Bentley,* 47 Mich

App 150; 209 NW2d 333 (1973). A defendant is only entitled to a substitution of appointed counsel when discharge of the first attorney is for 'good cause' and does not disrupt the judicial process. *People v Wilson,* 43 Mich App 459; 204 NW2d 269 (1972); *People v Holcomb,* 47 Mich App 573; 209 NW2d 701 (1973)."

What circumstances will show "good cause" for substituting appointed counsel depends on the facts and circumstances of each case and we reverse a trial court's determination only for an abuse of discretion. *People v Hernandez,* 84 Mich App 1; 269 NW2d 322 (1978). A complete breakdown of the attorney-client relationship or disagreement over whether a particular line of defense should be pursued may justify appointing new counsel. *People v Hooper,* 82 Mich App 713; 267 NW2d 162 (1978) (disagreement over alibi defense), *People v Wilson,* 43 Mich App 459; 204 NW2d 269 (1972), *lv den* 393 Mich 813 (1975) (communication between attorney and client had ceased). The problems in this case never reached that magnitude. The points raised by defendant, which are factually supported, can best be characterized as raising questions of professional judgment or trial strategy. These are matters entrusted to the attorney and do not justify substitution of counsel. *People v Thompson,* 41 Mich App 272; 199 NW2d 859 (1972), *lv den* 388 Mich 777 (1972), *People v Bentley,* 47 Mich App 150; 209 NW2d 333 (1973). The trial court did not abuse its discretion in refusing to appoint substituted counsel.

## II

Defendant next contends that the trial court erred in refusing a defense request to change

venue from Oakland County. Defendant had been labeled a murderer in a brochure prepared by the prosecutor of Oakland County criticizing the release of convicts prior to the expiration of their stated minimum term.[1] Distribution of the brochure with defendant's picture and a description of this offense was enjoined on defense counsel's motion. There is no indication in this record of how widely the brochure was distributed before the trial court acted.

The trial court took the motion to change venue under advisement until an attempt was made to select an impartial jury. The trial court excused all prospective jurors who were familiar with the brochure. A jury acceptable to defense counsel was selected before all peremptory challenges were exercised. The record shows that defendant actively participated in selecting the jury. The selection process took less than one day with relatively few jurors having been excused because of familiarity with the case or the prosecutor's brochure.

Under established precedent, a trial court commits no error in waiting until an attempt has been made to select a jury before ruling on a motion for a change of venue. *People v Swift,* 172 Mich 473; 138 NW 662 (1912). The reason for the rule is well illustrated by this case. A jury was selected rather quickly and, as selected, was free from apparent bias or prejudice. The widespread prejudice relied upon in seeking the motion to change venue seems not to have existed at all. On this record we hold that the trial court did not abuse its discretion in denying the motion to change venue. *People v*

[1] While it is never expressly stated in the record, defendant apparently committed this crime while on parole for another offense. He was apparently released from custody before the expiration of his stated minimum term under the "good time" law. MCL 800.33; MSA 28.1403.

*Nard,* 78 Mich App 365; 260 NW2d 98 (1977), *People v Gerald Hughes,* 85 Mich App 8; 270 NW2d 692 (1978).

### III

Relying principally on *People v Hoffmeister,* 394 Mich 155; 229 NW2d 305 (1975), and *People v Morrin,* 31 Mich App 301; 187 NW2d 434 (1971), *lv den* 385 Mich 775 (1971), defendant contends that the trial court erred in submitting the charge of first-degree murder to the jury. Under defendant's view of the evidence there was no evidence of premeditation and deliberation. The prosecution counters that, although the evidence is entirely circumstantial, it was sufficient to allow the jury to infer premeditation and deliberation.

Premeditation and deliberation need not be established by direct evidence. That defendant had the appropriate state of mind may be inferred from all the facts and circumstances. The inferences must have support in the record, however, and not be arrived at by mere speculation. *People v Hoffmeister, supra.* If, upon consideration of the prosecution's case, a jury could reasonably infer that the murder was done willfully and with premediation and deliberation, we must affirm their verdict. *People v Moss,* 70 Mich App 18, 41; 245 NW2d 389 (1976) (opinion of M. J. Kelly, J.), *lv gtd* 399 Mich 889 (1977). See, *People v Palmer,* 392 Mich 370; 220 NW2d 393 (1974).

The evidence in this case shows that the victim disappeared on the morning of November 5, 1976. She had been slow in preparing herself for school and had missed the bus. On such occasions she had been known to hitchhike to school. She was not in school that day, nor did she appear for work that afternoon. Her body was discovered the next morn-

ing by hunters, partially covered by trees and bark, in an undeveloped area of Oakland County. The killer had gone to considerable trouble to conceal the body.

Examination of the body showed that two weapons had been used to effectuate death. The victim had been struck in the head at least twice with a blunt, heavy object.[2] The skull was shattered in many pieces and crushed. Medical testimony also established that the victim's throat had been slashed after the blows to the head.[3] The wound was sufficiently deep to sever the carotid artery, the jugular vein and the voice box. The second cut on the neck was superficial. The victim had had sexual intercourse within 24 hours of her death, but it was not shown that she had been raped.[4]

It was not shown that the victim and defendant knew each other, although it was shown defendant's girlfriend and she had worked in the same factory in the past. The prosecutor's theory was that defendant had picked up the victim as she hitchhiked to school. The circumstantial evidence, discussed in the search and seizure issues below, tended to show that the victim had been in defendant's car. It would also support the conclusion

---

[2] Defendant's fiance, with whom he was living at the time of this offense, testified that defendant habitually carried heavy bolts under the front seat of his car. These bolts were missing when the car was searched and were never accounted for at trial. The blows to the head, according to the medical testimony, could have been struck with such an object.

[3] When arrested defendant had a scalpel in his shirt pocket. The medical testimony showed that the victim's neck wound could have been caused, or was consistent with, a scalpel cut. No blood or other matter was found on the scalpel seized from the defendant.

[4] The prosecution introduced evidence showing the victim's activities from the morning of November 4. Under this evidence it was unlikely she had opportunity for sexual intercourse before she left for school on the morning of the crime. This indicates that she had sex with her attacker, but it does not indicate whether that relationship was forced.

that there had been a struggle in the car, but that the victim was taken from the car, tied up and then killed in the field.

Unlike the conclusions in the cases relied upon by defendant, we conclude that the above-described evidence is sufficient to support the first-degree murder conviction. Although it does not compel the conclusion that the acts were done with premeditation and deliberation,[5] the evidence is sufficient to avoid saying that the jury's verdict was based on mere speculation. The area where the acts occurred and the evidence of sexual contact, compare *People v Hoffmeister, supra,* the fact that two weapons were used, the nature of the wounds, and that the victim had possibly been bound, *People v Vertin,* 56 Mich App 669; 224 NW2d 705 (1974), *People v Treadwell,* 63 Mich App 299; 234 NW2d 494 (1975), all tend to indicate a plan and reflection. There was no error in submitting the first-degree murder charge to the jury.

## IV

The defense contends that the initial seizure and impounding of defendant's car was improper, rendering the evidence discovered in the subsequent search,[6] pursuant to a warrant, inadmissible. The

---

[5]. "To premeditate is to think about beforehand; to deliberate is to measure and evaluate the major facets of a choice or problem. As a number of courts have pointed out, premeditation and deliberation characterize a thought process undisturbed by hot blood. While the minimum time necessary to exercise this process is incapable of exact determination, the interval between initial thought and ultimate action should be long enough to afford a reasonable man time to subject the nature of his response to a 'second look'." (Footnotes omitted.) *People v Morrin, supra,* pp 329-330.

[6] The victim's fingerprint and a palmprint were found on the outside of the car. Dog hair taken from the inside of the car was compared with dog hair found on the victim's clothing in an attempt to establish her presence in the car. The hair comparison evidence was not conclusive.

people advance several theories in support of the validity of the police action. As in all Fourth Amendment questions, our resolution of the dispute depends on the facts.

On the morning the body was discovered, the Michigan State Police Sergeant who was apparently in charge of the investigation talked to a private investigator, Mr. Joseph Booth, near the site where the body was discovered.[7] Booth told the sergeant that on the morning of the previous day he had been in this area and had seen a car parked by the side of the road with its parking lights on. During a closer inspection of the car, Booth had noticed a woman's purse with its contents strewn across the seats and a woman's coat in the back area of the car. It appeared to Booth that there had possibly been a struggle in the car.

While Booth was looking into the car an individual called from the field. Upon inquiry the individual had stated alternatively that he was hunting and then that his dog was lost. After noting the license plate number of the car, Booth left and was immediately followed by the individual in the field. Booth could then see that the individual was not dressed for hunting, did not have a dog with him and that he left alone. Booth concluded that the stories related by the individual were false.

After receiving the information from Booth, including a description of the individual in the field,[8] the sergeant ordered a surveillance of the address listed on the registration of the license number

[7] Because of his suspicions based on the facts cited in the text, Booth had returned to this area the afternoon of the 5th but had not gone far enough into the field to discover the body. Why he returned the next morning and spoke to the police is not clear.

[8] Booth could not positively identify defendant at trial and had picked another person out of the lineup before trial. Defendant looked "similar" to the individual seen in the field, according to Booth's trial testimony.

supplied by Booth. This address was defendant's parents' house. Eventually the car was spotted in the driveway. Defendant was arrested outside the house while walking a dog. The car was towed to a garage on police orders approximately one hour after defendant's arrest. No search was conducted until a warrant was obtained.

It is beyond question that the police activity involved in towing and impounding defendant's car is a seizure which is subject to Fourth Amendment analysis. Since no warrant was obtained, the seizure is per se unreasonable and, therefore, illegal unless the people can demonstrate that the facts bring this case within one of the well defined exceptions to the warrant requirement. *Coolidge v New Hampshire,* 403 US 443; 91 S Ct 2022; 29 L Ed 2d 564 (1971), *People v White,* 392 Mich 404; 221 NW2d 357 (1974).

Our view of the facts, in light of the previous cases, leads to the conclusion that the warrantless seizure of defendant's car was justified under the so-called automobile exception to the warrant requirement. The police had probable cause to believe that evidence of the crime could be found in or on the automobile and exigent circumstances made it impractical to obtain a warrant before the seizure.

In addition to the information provided by Booth, the police also knew that defendant had previously been involved in an incident in which a young woman had been left tied up in a field. The totality of the circumstances known to the police was sufficient to warrant a man of reasonable caution in the belief that an offense had been committed and that evidence thereof would be found in or on the car. See, *People v Rodriguez,* 83 Mich App 606; 269 NW2d 199 (1978). Probable cause to seize the vehicle existed.

We are also convinced that exigent circumstances existed. Although defendant had been arrested, the automobile was still mobile. *Chambers v Maroney,* 399 US 42; 90 S Ct 1975; 26 L Ed 2d 419 (1970). Defendant's parents were in the area and had to be kept away from the car on at least one occasion. It was unknown what other persons might have access to the car if it were to be left in the driveway. Even touching the car might have destroyed the fingerprint evidence which was later obtained. It was necessary to move the car to avoid this possible loss of evidence.[9]

A defendant has significantly less expectation of privacy in an automobile, as opposed to a house or an office and, therefore, the warrant requirement will be more readily excused. *South Dakota v Opperman,* 428 US 364; 96 S Ct 3092; 49 L Ed 2d 1000 (1976), *Cardwell v Lewis,* 417 US 583; 94 S Ct 2464; 41 L Ed 2d 325 (1974). This is especially so when a defendant is in custody because of the minimal further inconvenience from the temporary immobilization of the vehicle. *Commonwealth v Holzer,* 480 Pa 93; 389 A2d 101 (1978).

The time sequence distinguishes this case from *Coolidge v New Hampshire, supra,* and calls for a different result. Here, the police took no action, other than surveillance, until they spotted defendant and determined that he matched the description supplied by Booth. It was only at that point that the officers could be reasonably sure they were dealing with the same individual Booth had seen in the field the day before. In *Coolidge,* the seizure of the car from defendant's driveway was condemned because the police had advance knowl-

---

[9] For purposes of a constitutional analysis there is little or no difference in the intrusion involved in simply securing a car at the scene until a warrant is obtained as opposed to searching it or seizing it immediately. See, *Chambers v Maroney,* 399 US 42, 51-52.

edge of the existence and location of the evidence, the police knew before they went to the scene that they intended to seize the car, and they also had ample opportunity to obtain a warrant.[10] Exigent circumstances were simply lacking on that record.

Here, if the evidence was to be preserved, even from the weather, quick police action was imperative. It was, therefore, reasonable under the Fourth Amendment since probable cause existed. Other courts have reached the same conclusion on similar facts. See, *e.g., Commonwealth v Holzer, supra, People v Jones,* 56 App Div 2d 142; 392 NYS2d 98 (1977), *Montague v State,* 266 Ind 51; 360 NE2d 181 (1977), *State v Roy,* 265 NW2d 663 (Minn, 1978).

## V

Defendant also claims that the fingerprints and palmprint evidence, discovered in a search authorized by a warrant, should have been suppressed because the affidavit supporting the warrant did not recite facts which would tie the automobile to the area where the body was discovered at a relevant time. The main thrust of the argument is that seeing the car in the area on the day before the victim's body was discovered is insufficient, *i.e.,* it could have been entirely innocent. *People v Rosborough,* 387 Mich 183; 195 NW2d 255 (1972).

Assuming that a warrant was necessary,[11] we find defendant's contention to be without merit. The facts disclosed, although they could possibly

---

[10] Discussion of the seizure of the car from defendant's driveway is discussed in part 11 D of Justice Stewart's opinion in *Coolidge.* 403 US 443, 473-484. Five justices joined in this part of the opinion, including the repeated stress on the ample opportunity to obtain a warrant on the facts presented.

[11] In this issue defendant is challenging only the admission of the prints found on the exterior of the car. See, *Cardwell v Lewis, supra.*

be innocently interpreted, gave rise to a strong possibility of criminal involvement. A "common sense" reading of the affidavit supports the district judge's decision to issue the warrant. See, *People v Emmert,* 76 Mich App 26; 255 NW2d 757 (1977). It was not necessary to prove that the evidence would be found, it was sufficient to show the probability of its existence. *People v Coffey,* 61 Mich App 110; 232 NW2d 320 (1975), *lv den* 395 Mich 772 (1975). The facts recited in the affidavit and the inferences which the district judge could reasonably draw from them satisfy this standard.

## VI

Various other issues have been raised by defendant and his appointed appellate counsel. These issues have been considered. None require decisional discussion or reversal. Defendant received a fair trial and was properly convicted.

Affirmed.