# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

CHRISTOPHER ANDREW TANK,

      Defendant-Appellant.

UNPUBLISHED
April 19, 2018

No. 335366
Alpena Circuit Court
LC No. 15-006912-FC

Before: MURPHY, P.J., and JANSEN and SWARTZLE, JJ.

PER CURIAM.

Defendant appeals as of right his jury convictions of first-degree premeditated murder, MCL 750.316(1)(a), discharge of a firearm from a vehicle, MCL 750.234a, carrying a concealed weapon (CCW), MCL 750.227, and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. The trial court sentenced defendant to life imprisonment without parole for the murder conviction, life imprisonment for the discharge of a firearm conviction, and two to five years' imprisonment for the CCW conviction, those sentences to be served concurrently, but consecutive to a two-year term of imprisonment for the felony-firearm conviction. We affirm.

The jury convicted defendant of murdering Robert Arch outside Arch's home on May 13, 2015. Defendant and the victim were formerly friends, but their relationship had become strained. The victim's girlfriend, Stacy Phillips, had known defendant since junior high school, and she briefly dated defendant's brother. The victim had fathered a son with defendant's sister, and the victim had recently obtained a favorable ruling in a custody dispute with defendant's sister.

On May 13, defendant confronted the victim outside the victim's home. The victim told defendant that he was not welcome and asked him to leave. As the victim approached defendant's vehicle, defendant sped off in his car, a small, green foreign vehicle. Approximately 20 to 30 minutes later, the victim looked outside his kitchen window and told Phillips that defendant had returned. The victim went outside and then Phillips heard a noise that sounded like fireworks. Phillips testified that she went outside the front door and saw defendant shoot the victim. According to Phillips, defendant, who was seated in the driver's seat, reached across the passenger side of the vehicle, and fired a gun through the open passenger window. Defendant

-1-

was the only person inside the vehicle. After the victim was shot, he turned around and told Phillips: "Call the cops. Tell them it was Chris Tank." Defendant then sped away in his vehicle.

A 10-year-old witness testified that she saw a man in a green car pull up to the victim's home and shoot another man multiple times before driving away. She said there was only one person inside the car. Another witness, however, testified that there were two men in the car and it was the passenger who fired the gun.

A responding paramedic testified that while treating the victim at the scene, he asked the victim "Who did this?" and the victim replied, "Tank." Later that day, the police stopped defendant's vehicle, a green Subaru Legacy, on M-65 as it was headed out of town. The police discovered a .45 Colt pistol with an empty magazine inside the glove box of defendant's car. A spent shell casing was discovered behind the driver's seat. A backpack containing clothing and a loaded handgun magazine was lying on the front passenger seat. Additional pieces of luggage were in the back seat. A firearm's expert later matched two shell casings and a bullet fragment found at the scene to defendant's gun. An officer also observed an apparent bullet hole through the passenger side-view mirror of defendant's car. John Lucey, a forensic scientist with the Michigan State Police crime lab, was qualified as an expert in the field of fracture match principles. Lucey testified that pieces of black plastic recovered at the scene could be matched to the damaged housing unit of the side-view mirror of defendant's vehicle. The defense theory at trial was that a second person in defendant's vehicle shot the victim.

## I. DYING DECLARATION

Defendant first argues that his constitutional right of confrontation was violated by the admission of the paramedic's testimony that, in response to the paramedic's inquiry, the victim said he was shot by "Tank." Defendant acknowledges that this constitutional issue was not raised below. Therefore, the issue is unpreserved and review is limited to plain error affecting defendant's substantial rights. *People v Danto*, 294 Mich App 596, 605; 822 NW2d 600 (2011). Defendant further argues, however, that defense counsel was ineffective for failing to raise an objection based on the Confrontation Clause. To establish ineffective assistance of counsel, defendant must show that: (1) counsel's representation "fell below an objective standard of reasonableness"; and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome of the proceeding would have been different. *People v Vaughn*, 491 Mich 642, 670; 821 NW2d 288 (2012).

Defendant acknowledges that the victim's statement to the paramedic qualifies as a "dying declaration" under MRE 804(b)(2). He argues, however, that the statement qualifies as "testimonial," and therefore, its admission violated his Sixth Amendment right of confrontation. US Const, Am VI; Const 1963, art 1, § 20. We disagree, because "dying declarations are admissible as an historical exception to the Confrontation Clause." *People v Taylor*, 275 Mich App 177, 183; 737 NW2d 790 (2007).

Defendant cites *Michigan v Bryant*, 562 US 344; 131 S Ct 1143; 179 L Ed 2d 93 (2011), in support of his argument that dying declarations are not admissible unless they are nontestimonial. In that case, however, the Supreme Court acknowledged the historical-exception thesis proposed in *Crawford v Washington*, 541 US 36, 56 n 6; 124 S Ct 1354, 1364; 158 L Ed

2d 177 (2004), but noted that the state had failed to preserve its argument with regard to dying declarations, and therefore, it expressly declined to "decide that question here." *Bryant*, 562 US at 351 n 1. Thus, *Bryant* does not repudiate this Court's holding in *Taylor* that dying declarations are admissible as an historical exception to the Confrontation Clause. Accordingly, there was no plain error in admitting the victim's dying declaration identifying defendant as his assailant. Further, because the statement was admissible without violating the Confrontation Clause, defense counsel was not ineffective for failing to object on that ground. Counsel is not ineffective for failing to raise a meritless objection. *People v Collins*, 298 Mich App 458, 470; 828 NW2d 392 (2012).

## II. EXPERT TESTIMONY

Defendant next argues that the trial court erred when it permitted the prosecution's witness, Lucey, to offer expert testimony regarding "fracture match" principles to show that pieces of plastic found at the scene matched defendant's broken passenger side-view mirror. "[T]he determination regarding the qualification of an expert and the admissibility of expert testimony is within the trial court's discretion." *People v Murray*, 234 Mich App 46, 52; 593 NW2d 690 (1999).

MRE 702, which governs the admissibility of expert testimony, provides:

> If the court determines that scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise if (1) the testimony is based on sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

MRE 702 requires "a court evaluating proposed expert testimony [to] ensure that the testimony (1) will assist the trier of fact to understand a fact in issue, (2) is provided by an expert qualified in the relevant field of knowledge, and (3) is based on reliable data, principles, and methodologies that are applied reliably to the facts of the case." *People v Kowalski*, 492 Mich 106, 120; 821 NW2d 14 (2012). All three of these requirements must be met to permit the use of the testimony. *Id*. at 120-121. However, the reliability inquiry is a flexible one and must be tied to the facts of the particular case; thus, factors for determining reliability may differ depending on the type of expert testimony offered, as well as the facts of the case. *Kumho Tire Co v Carmichael*, 526 US 137, 150; 119 S Ct 1167; 143 L Ed 2d 238 (1999); *Daubert v Merrell Dow Pharm, Inc*, 509 US 579, 591; 113 S Ct 2786; 125 L Ed 2d 469 (1993); *Kowalski*, 492 Mich at 120. In this case, defendant challenges whether Lucey's fracture match testimony was based on reliable scientific principles and methods, as well as Lucey's qualifications to offer such testimony.

During preliminary questioning, Lucey explained that the discipline of fracture match involved determining whether an object had been broken and, if so, observing whether the pieces could be fitted back together to determine whether they were a part of the same object. He stated that fracture matching was "much like a lock and key fit or a jigsaw puzzle type of thing," much

like putting pieces of a broken vase back together. We are satisfied that the trial court did not abuse its discretion in admitting Lucey's testimony. Although Lucey did not cite any published articles on fracture match analysis, he testified that there were research and scientific papers discussing the subject. Moreover, he stated that his knowledge of fracture match principles came from both training in the laboratory and from having gone to "fracture match school." He had previously been qualified to provide fracture match testimony in other cases. Defendant has not identified any case in which a court refused to recognize the reliability of fracture match analysis. We conclude that the trial court did not abuse its discretion in admitting Lucey's fracture match testimony.

Furthermore, even if the trial court erred in admitting the testimony, the error was harmless. A preserved, nonconstitutional error is presumed to be harmless "unless 'after an examination of the entire cause, it shall affirmatively appear' that it is more probable than not that the error was outcome determinative." *People v Lukity*, 460 Mich 484, 495-496; 596 NW2d 607 (1999), quoting MCL 769.26. "[T]he effect of the error is evaluated by assessing it in the context of the untainted evidence to determine whether it is more probable than not that a different outcome would have resulted without the error." *Id*. at 495. Defendant argues that Lucey's testimony was "the strongest piece of testimony" to refute the main defense theory that "there was a second person who shot from the passenger seat" who killed the victim. We disagree. Lucey's testimony merely served to link defendant's vehicle to the shooting. Lucey testified that black pieces of plastic recovered at the scene could be matched as portions of the damaged housing unit of the passenger-side mirror on defendant's Subaru. However, witnesses consistently described the shooter's vehicle as matching the description of defendant's vehicle, Phillips expressly identified defendant as the shooter, and ballistics evidence established that the gun recovered from defendant's vehicle was used to shoot the victim. In addition, at the time of defendant's arrest, a police officer observed an apparent bullet hole through the passenger side-view mirror of defendant's car. The defense theory at trial was that the victim was shot by a second person from the passenger seat inside defendant's car. Lucey's testimony was not probative of the number of people inside defendant's vehicle at the time of the shooting. Accordingly, it is not more probable than not that a different outcome would have occurred if

## III. DEFENDANT'S STANDARD 4 BRIEF

Defendant raises two additional issues in a pro se supplemental brief, filed pursuant to Supreme Court Administrative Order No. 2004-6, Standard 4, neither of which have merit.

## A. DIRECTED VERDICT

Defendant first argues in his Standard 4 brief that the trial court erred by denying his motion for a directed verdict of the charge of first-degree premeditated murder. We disagree.

"In assessing a motion for a directed verdict of acquittal, a trial court must consider the evidence presented by the prosecution to the time the motion is made[.]" *People v Riley (After Remand)*, 468 Mich 135, 139; 659 NW2d 611 (2003). In so doing, "we review the evidence in a light most favorable to the prosecution to determine whether a rational trier of fact could have found that the essential elements of the crime were proved beyond a reasonable doubt." *People v Schrauben*, 314 Mich App 181, 198; 886 NW2d 173 (2016) (quotations omitted).

"Circumstantial evidence and reasonable inferences drawn from it may be sufficient to prove the elements of the crime." *People v Gould*, 225 Mich App 79, 86; 570 NW2d 140 (1997).

"Before a defendant may be convicted of first-degree [premeditated] murder, the prosecution must prove that the defendant intentionally killed the victim and that the act of killing was premeditated and deliberate." *People v Schollaert*, 194 Mich App 158, 170; 486 NW2d 312 (1992). Defendant challenges the trial court's determination that the prosecutor presented sufficient evidence of premeditation. "[B]ecause it can be difficult to prove a defendant's state of mind on issues such as knowledge and intent, minimal circumstantial evidence will suffice to establish the defendant's state of mind, which can be inferred from all the evidence presented." *People v Kanaan*, 278 Mich App 594, 622; 751 NW2d 57 (2008). In *People v Oros*, 320 Mich App 146, 154-155; 904 NW2d 209 (2017), oral argument gtd on the application 501 Mich 883 (2107), this Court observed:

> To "premeditate" means "to think about beforehand." *People v Morrin*, 31 Mich App 301, 329, 187 NW2d 434 (1971). Merriam-Webster's Collegiate Dictionary (11th ed.) defines "premeditate" as "to think about and revolve in the mind beforehand[.]" Black's Law Dictionary (10th ed.) defines "premeditation" as "[c]onscious consideration and planning that precedes an act (such as committing a crime); the pondering of an action before carrying it out." Premeditation can be proved through circumstantial evidence; however, inferences may "not be arrived at by mere speculation." *People v O'Brien*, 89 Mich App 704, 710, 282 NW2d 190 (1979). The prosecution may establish premeditation and deliberation through evidence of (1) the parties' prior relationship, (2) the defendant's actions before the killing, (3) the circumstances surrounding the killing itself, and (4) the defendant's conduct after the killing. *People v Schollaert*, 194 Mich App 158, 170; 486 NW2d 312 (1992). [Footnote omitted.]

In addition, this Court has noted that "premeditation and deliberation require sufficient time to allow the defendant to take a second look." *Schollaert*, 194 Mich App at 170.

The evidence in this case was sufficient to support a finding of premeditation. Testimony was presented that defendant and the victim knew each other, but had recently become estranged, ostensibly because of defendant's conduct toward the victim's girlfriend or the victim's custody battle with defendant's sister. Testimony was also presented of defendant's recent hostile encounters with the victim at the victim's home. Such evidence may support an inference of premeditation. In addition, defendant visited the victim's home and was involved in an altercation with the victim approximately 20 minutes before the shooting. The evidence indicated that defendant left the victim's house, returned 20 minutes later, and immediately shot the unarmed victim before driving off and leaving town. The jury could find from this evidence that defendant formed an intent to kill the victim, went home to obtain a gun and pack some clothing, returned to the victim's home intending to kill him, shot the victim, and then left town. Although defendant presents alternative reasons for why he would have his belongings in his car with him as he fled, the trial court was required to view the evidence in a light most favorable to the prosecution. A reasonable jury could have found that defendant had already packed and placed his belongings in his car when he shot the victim as part of a preconceived plan to kill the

victim and leave town. The trial court did not err in denying defendant's motion for a directed verdict.

## B. PSYCHOLOGICAL EVALUATION

Defendant next argues in his Standard 4 brief that the trial court erred by denying his request for an independent psychological evaluation under MCL 768.20(a)(3). We disagree. This Court reviews a trial court's decision whether to grant an indigent defendant's motion for the appointment of an expert witness for an abuse of discretion. *People v Carnicom*, 272 Mich App 614, 616; 727 NW2d 399 (2006).

Defendant was entitled to an independent psychiatric evaluation only upon a showing of good cause. MCL 768.20a(3). At defense counsel's request, defendant was examined twice by a doctor at the Center for Forensic Psychiatry. Defendant does not discuss either of the resulting psychological reports, but merely asserts that "health records showing that [defendant] was diagnosed with general anxiety and ADHD in the months before the shooting" were provided before the second evaluation. However, "[m]ental illness or having an intellectual disability does not otherwise constitute a defense of legal insanity." MCL 768.21a(1). Defendant has not, either below or on appeal, presented anything to suggest that he could raise even a colorable claim of insanity. There is no basis for concluding that defendant established good cause for an independent psychiatric evaluation. Accordingly, the trial court did not abuse its discretion by denying defendant's motion for an independent psychiatric evaluation.

Affirmed.


/s/ William B. Murphy
/s/ Kathleen Jansen
/s/ Brock A. Swartzle

-6-